## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

HERMALINDA DIAZ,

       Plaintiff,

vs.                                            No. CIV 11-0090 JB/CG

CITY OF TUCUMCARI,

       Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion for Summary Judgment, filed August 5, 2011 (Doc. 22)("MSJ"). The Court held a hearing on November 30, 2011. The primary issues are: (i) whether Plaintiff Hermalinda Diaz has established a genuine issue of material fact on her claim of race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e- to 2000e-17; (ii) whether Diaz has established a genuine issue of material fact on her claim of race discrimination in violation of the New Mexico Human Rights Act, N.M.S.A. 1978, § 28-1-1 to -15 ("NMHRA"); and (iii) whether Diaz has established a genuine issue of material fact on her claim of retaliation under the NMHRA. The Court will grant in part and deny in part the MSJ. The Court will grant the MSJ in favor of Defendant City of Tucumcari with respect to Count I. Because that decision disposes of all the federal claims in the case, the Court will decline to exercise supplemental jurisdiction over and will not decide Counts II and III of the Complaint. The Court will dismiss Counts II and III without prejudice.

### FACTUAL BACKGROUND

The material facts are largely undisputed. The City of Tucumcari, located in Quay County, New Mexico, is Diaz' former employer. See Complaint for Wrongful Termination of Employment

as the Result of Retaliation and for New Mexico Commonlaw [sic] Tort, and for Punitive Damages ¶ 1, at 1, filed January 26, 2011 (Doc. 1)("Complaint"); Response by Plaintiff Hermalinda Diaz to Defendant's Motion for Summary Judgment ¶ 1, at 1, filed August 29, 2011 (Doc. 26)("Response")(setting forth this fact).[1]  The City of Tucumcari hired Diaz on May 13, 1993.  See Complaint ¶ 12, at 3; Memorandum Brief of Defendant City of Tucumcari in Support of Motion for Summary Judgment ¶ 1, at 2, filed August 5, 2011 (Doc. 23)("Mem. MSJ")(setting forth this fact); Response at 5 (not disputing this fact).  Diaz was originally hired for a six-month part-time position as Clerk of Record.  See Affidavit of Hermalinda Diaz ¶ 3, at 2 (executed August 26, 2011)(Doc. 26-1)("Diaz Aff."); Response at 5-6 (setting forth this fact).[2]  Diaz worked at the Tucumcari

---

[1]The City of Tucumcari in its Reply stated that the Response did not set forth any additional facts for the Court to consider.  See Defendant's Reply in Support of Summary Judgment at 1, filed September 15, 2011 (Doc. 30)("Reply").  The Court notes that Diaz set forth some additional information in her summary of the case and in her explanation of the disputes of fact, the Court will consider these facts.  The City of Tucumcari stated that it did not consider the information Diaz provided material and disputed only some of these additional facts.  Local rule D.N.M.LR-Civ. 56.1 provides:

> The Reply must contain a concise statement of those facts set forth in the Response which the movant disputes or to which the movant asserts an objection. Each fact must be lettered, must refer with particularity to those portions of the record upon which the movant relies, and must state the letter of the non-movant's fact. All material facts set forth in the Response will be deemed undisputed unless specifically controverted.

D.N.M.LR-Civ. 56.1(b).  The Court will deem these facts admitted unless the City of Tucumcari specifically controverted them as required under the Local Rules.  Because the City of Tucumcari did not attempt to controvert the fact that the City of Tucumcari is located in Quay County, the Court will deem this facts admitted.  See D.N.M.LR-Civ. 56.1(b).

[2]The City of Tucumcari does not refer to this fact, that Diaz was originally hired as a six-month part-time Clerk of Record, in its Reply.  Because the City of Tucumcari has not attempted to specifically controvert the asserted fact, the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1(b).

Housing Authority, where she served as a Program Specialist.  See Complaint ¶ 12, at 3; Mem. MSJ ¶ 1, at 2 (setting forth this fact); Response at 5 (not disputing this fact).  Diaz was hired under a grant, and she lived in public housing.  See Response at 5 (setting forth this fact); Reply at 1 (not disputing this fact).

At all times relevant to the Complaint, Diaz was employed as a Program Specialist with the City of Tucumcari.  See Complaint ¶ 5, at 2.  Among the duties of the Program Specialist are, according to United States Department of Housing and Urban Development's ("HUD") and the City of Tucumcari's procedures, gathering information for Section 8 applicants,[3] preparing leases and contracts, and keeping accurate records.  See Affidavit of Clara Rey ¶ 9, at 2 (executed August 5, 2011) filed August 5, 2011 (Doc. 23-1)("Rey Aff."); Mem. MSJ ¶ 2, at 2 (setting forth this fact); Response at 6 (not disputing this fact).  Persons who seek assistance from the Tucumcari Housing Authority are required to meet certain financial guidelines.  See Rey Aff. ¶¶ 6-7, at 2; Mem. MSJ ¶ 6, at 2 (setting forth this fact); Response at 7 (not disputing this fact).  One of the Program Specialists' jobs is to obtain the necessary information to see if the individuals qualify.  See Rey Aff. ¶¶ 9, at 2; Mem. MSJ ¶ 6, at 2 (setting forth this fact); Response at 7 (not disputing this fact).  HUD sets these guidelines.  See Rey Aff. ¶¶ 6-7, at 2; Mem. MSJ ¶ 6, at 2 (setting forth this fact); Response at 7 (not disputing this fact).  HUD requires yearly audits of the program to make sure that the guidelines are followed.  See Rey Aff. ¶¶ 6-7, at 2; Mem. MSJ ¶ 6, at 2 (setting forth this fact);

---

[3]Section 8 of the United States Housing Act of 1937, Pub. L. 93-383, 88 stat. 653 (codified at 42 U.S.C. § 1437f) provides for low-income housing assistance.  The purpose of Section 8 is to aide "low-income families in obtaining a decent place to live" and to promote "economically mixed housing" by providing assistance payments.  42 U.S.C. § 1437f(a).  Section 8 also authorizes the HUD Secretary "to enter into annual contribution contracts with public housing agencies pursuant to which such agencies may enter into contracts to make assistance payments to owners of existing dwelling units in accordance with this section."  42 U.S.C. § 1437f(b).

Response at 7 (not disputing this fact). The City of Tucumcari and its employees' failure to follow these guidelines could result in loss of the funds needed to operate the program. <u>See</u> Rey Aff. ¶¶ 6-7, at 2; Mem. MSJ ¶ 6, at 2-3 (setting forth this fact); Response at 7 (not disputing this fact). Diaz also worked with applicants, preparing leases and contracts for public housing. <u>See</u> Response at 6 (setting forth this fact); Reply at 1 (not disputing this fact).

Diaz' direct supervisor was Wilhelmina Martin. <u>See</u> Rey Aff. ¶ 4, at 1; Mem. MSJ ¶ 3, at 2 (setting forth this fact); Response at 6 (not disputing this fact). Martin became Diaz' supervisor in approximately January of 2008. <u>See</u> Complaint ¶ 14, at 3; Rey Aff. ¶ 4, at 1; Response at 3 (setting forth this fact); Reply at 1 (not disputing this fact). Martin could speak Spanish. <u>See</u> Rey Aff. ¶ 14, at 3; Mem. MSJ ¶ 3, at 2 (setting forth this fact). Martin could speak very little Spanish, however. <u>See</u> Diaz Aff. ¶ 3, at 2; Response at 6 (setting forth this fact).[4] Martin would ask for help from Diaz to interpret for her during application interviews. <u>See</u> Diaz Aff. ¶ 3, at 2; Response at 6

---

[4]The City of Tucumcari does not respond to this assertion in its Reply. Local rule D.N.M.LR-Civ. 56.1 provides:

> The Reply must contain a concise statement of those facts set forth in the Response which the movant disputes or to which the movant asserts an objection. Each fact must be lettered, must refer with particularity to those portions of the record upon which the movant relies, and must state the letter of the non-movant's fact. All material facts set forth in the Response will be deemed undisputed unless specifically controverted.

D.N.M.LR-Civ. 56.1(b). There is no conflict between this fact and the City of Tucumcari's asserted fact that Martin could speak Spanish, <u>see</u> Rey Aff. ¶ 14, at 3; Mem. MSJ ¶ 3, at 2, because a person may speak a language, but not speak it well. Because the Reply does not refer to or discuss the asserted fact that Martin could speak very little Spanish, the Court will deem this fact admitted. <u>See</u> D.N.M.LR-Civ. 56.1(b).

(setting forth this fact).[5]

On or about July 16, 2009, while at work, Diaz was involved in and had a conversation with a former City Commissioner.  See Complaint ¶ 15, at 3; Mem. MSJ ¶ 4, at 2 (setting forth this fact); Response at 6 (not disputing this fact).  That conversation was in Spanish.  See Complaint ¶ 15, at 3; Mem. MSJ ¶ 4, at 2 (setting forth this fact); Response at 6 (not disputing this fact).  Martin overheard Diaz' conversation with the former Commissioner.  See Complaint ¶ 16, at 3; Mem. MSJ ¶ 5, at 2 (setting forth this fact); Response at 6-7 (not disputing this fact).  The City of Tucumcari contends that, during that conversation, Diaz discussed information relating to the Commissioner's brother.  See Employee Corrective Action/Counseling Form at 12 (dated September 9, 2009) filed August 5, 2011 (Doc. 23-1)("Corrective Action Form"); Mem. MSJ ¶ 5, at 2 (setting forth this fact).[6] Under the Housing Authority's rules, a discussion about a client would be a breach of the Housing

---

[5]The City of Tucumcari does not respond to this assertion in its Reply, as required under local rule 56.1(b) if a party wishes to dispute a fact asserted in the Response.  Because the City of Tucumcari did not address the fact, that Diaz would assist Martin with interpretation and interviews, the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1(b).

[6]The City of Tucumcari also asserts that the former Commissioner's brother "was an adult client of the Housing Authority."  Mem. MSJ ¶ 5, at 2.  Diaz disputes that the former Commissioner's brother was a client and instead asserts that the former Commissioner "was asking questions to assist his brother with the application."  Response at 7; Diaz Aff. ¶ 5, at 2-3.  Diaz insists that no personal information was disclosed.  See Response at 7; Diaz Aff. ¶ 5, at 3.  Diaz' affidavit directly contradicts the asserted fact that the brother was a client.  In its Reply, the City of Tucumcari states that this contradiction is not material, because there is nothing to show that Martin was appraised of Diaz' explanation and because the Corrective Action Form, which Diaz signed, lists "disclosing personal information" as one of Diaz' infractions.  Reply at 2.  Diaz' affidavit, however, shows that there is a genuine, material dispute of fact.  The Court will resolve this dispute in Diaz' favor, as the non-moving party, see Hunt v. Cromartie, 526 U.S. 541, 551 (1999)(stating that the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party), and not include the portion of the City of Tucumcari's asserted fact which states that the former Commissioner's brother "was an adult client of the Housing Authority."  Mem. MSJ ¶ 5, at 2.

-5-

Authority's confidentiality policy, which prevents disclosure of any information about clients without authorization.  See Corrective Action Form at 12; Rey Aff. ¶ 8, at 2; Acknowledgment of Confidentiality Provisions at 7 (dated July 17, 2006), filed August 5, 2011 (Doc. 23-1)("Acknowledgment"); Mem. MSJ ¶ 5, at 2 (setting forth this fact).[7]  The brother was not a client, however, and the Commissioner was asking questions about completing the application to assist his brother with the application.  See Diaz Aff. ¶ 5, at 2-3; Response at 7 (setting forth this fact).[8]  No personal information disclosed.  See Diaz Aff. ¶ 5, at 2-3; Response at 7 (setting forth this fact).  The conversation was in regards only to completing the application.  See Diaz Aff. ¶ 5, at 2-3; Response at 7 (setting forth this fact).[9]  In any case, the Corrective Action Form indicates that Martin reprimanded Diaz for disclosing personal information.   See Corrective Action Form at 12;

---

[7]Although Diaz states that she disputes paragraph 5 of the Memorandum in Support of MSJ, she does not appear to dispute the portion of paragraph 5 which states that it is a breach of Housing Authority rules to disclose information about clients without authorization.  See Response at 2-3. Diaz' dispute focuses on whether the former Commissioner's brother was a client and whether personal information was disclosed.  See Response at 2-3.  Because Diaz does not attempt to specifically controvert the portion of this paragraph which states that it is a breach of Housing Authority rules to disclose information about clients without authorization, the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1(b).

[8]The City of Tucumcari does not appear to dispute that the former Commissioner's brother was not a client; instead, in its Reply the City of Tucumcari argues that this fact is not material, because there is nothing to show that Martin was appraised of Diaz' explanation and because the Corrective Action Form, which Diaz signed, lists "disclosing personal information" as one of Diaz' infractions.  Reply at 2.  Because the City of Tucumcari does not specifically controvert the asserted fact, that the brother was not a client, the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1(b).

[9]The City of Tucumcari does not appear to dispute that no personal information was disclosed; instead, in its Reply, the City of Tucumcari argues that this fact is not material, because there is nothing to show that Martin was appraised of Diaz' explanation and because the Corrective Action Form, which Diaz signed, lists "disclosing personal information" as one of Diaz' infractions. Reply at 2.  Because the City of Tucumcari does not specifically controvert the asserted fact, that no personal information was disclosed, the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1(b).

Respondent's Proposed Resolution Form at 14, filed August 5, 2011 (Doc. 23-1)("Resolution Form"); Mem. MSJ ¶ 5, at 2 (setting forth this fact).[10]

On September 11, 2009, Martin prepared a written reprimand summarizing concerns that she had about Diaz' job performance and advising her that she needed to show improvement.  See Corrective Action Form at 12; Mem. MSJ ¶ 7, at 3 (setting forth this fact).[11]  Martin identified three specific areas: (i) she was in violation of HUD policies by failing to have leases signed and contracts were missing; (ii) she had disclosed information in violation of policy; and (iii) she had failed to complete an online certification needed for her position.  See Corrective Action Form at 12; Mem.

_____

[10]In her Complaint and in the Summary of the Case section of her Response, Diaz asserts that Martin accused her of using bad language and demanded that she not speak in Spanish at the office.  See Complaint ¶ 16, at 3; Response ¶ 5, at 2.  Diaz further asserts that Martin later denied making this statement and asked Diaz to sign a form to that affect.  See Complaint ¶ 16, at 3; Response ¶ 5, at 2.  The City of Tucumcari asserts that Diaz cannot show that Martin acted in an unfair or discriminatory manner.  See Reply at 2.  Diaz does not refer to the record to support these facts and does not re-state them in her affidavit.  A nonmoving party "may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993).  Additionally, D.N.M.LR-Civ. 56.1(b) requires that each additional fact set forth in the Response "must refer with particularity to those portions of the record upon which the non-movant relies."  D.N.M.LR-Civ. 56.1(b).  Because Diaz has not cited any evidence in the record to support these assertions, that Martin demanded that she not speak Spanish, the Court will not admit them for the purposes of summary judgment.

Additionally, Diaz does not dispute that the Corrective Action Form reflects that one of the statement of reasons for which she was disciplined included "disclosed personal information."  Corrective Action Form at 12.  Because Diaz does not appear to dispute this fact, the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1(b).

[11]Diaz disputes the facts contained in paragraph 7 of the MSJ, which includes the asserted fact, that on September 11, 2009, Martin prepared a written reprimand summarizing concerns she had about Diaz' job performance.  See Response at 8.  Diaz' explanation of her dispute, however, concentrates on the portion of paragraph 7 that addresses the areas in which Diaz needed to improve.  See Response at 8.  Diaz introduced no evidence to controvert the asserted fact.  Because Diaz has not specifically controverted this portion of paragraph 7, that on September 11, 2009 Martin prepared a written reprimand summarizing concerns she had about Diaz' job performance, the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1(b).

MSJ ¶ 7, at 3 (setting forth this fact).[12]  Other than warning her that she needed to show immediate improvement in these areas, Diaz received no discipline.  See Corrective Action Form at 12; Mem. MSJ ¶ 7, at 3 (setting forth this fact).[13]  Diaz did not, however, need to improve in these three areas.  See Diaz Aff. ¶ 7, at 3-4; Response at 8 (setting forth this fact).[14]  First, the original lease and

_____

[12]Diaz disputes that she needed improvement in these three areas.  Diaz asserts that: (i) the original lease and contract were sent to the landlord for signature, but until the landlord returned the signed lease, a copy of the unsigned lease and contract would remain in the file; (ii) she never disclosed personal information regarding any clients with the Housing Program; and (iii) at the time of the certification workshop, Diaz' mother had passed away, and, although she was prepared to take the testing for certification, Martin would not let her take the test.  See Diaz Aff. ¶ 7, 3-4; Response at 8.  The portions of Diaz' affidavit to which she cites do not specifically controvert the asserted fact that Martin identified problems with violations of lease rules, disclosure of personal information rules, and certification rules as areas in which she needed to improve.  Rather, Diaz' information includes additional facts about whether she actually needed to improve in these areas, and the Court will treat this information as setting forth additional facts.  Accordingly, because Diaz did not specifically controvert the City of Tucumcari's asserted fact, that Martin identified these three areas as requiring improvement, the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1(b).

[13]Diaz disputes the facts contained in paragraph 7 of the MSJ, which includes the asserted fact that, other than warning her that she needed to show immediate improvement in these areas, Diaz received no discipline.  See Response at 8.  Diaz' explanation of her dispute, however, concentrates on the portion of paragraph 7 which addressed the areas in which Diaz needed to improve.  See Response at 8.  Diaz introduced no evidence to controvert the asserted fact that, other than warning her that she needed to show immediate improvement in these areas, Diaz received no discipline.  Because Diaz has not specifically controverted this portion of paragraph 7, that other than warning her that she needed to show immediate improvement in these areas, Diaz received no discipline, the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1(b).

[14]Diaz states that she did not need to improve in any of these areas.  Diaz asserts that: (i) the original lease and contract were sent to the landlord for signature, but until the landlord returned the signed lease, a copy of the unsigned lease and contract would remain in the file; (ii) she never disclosed personal information regarding any clients with the Housing Program; and (iii) at the time of the certification workshop, Diaz' mother had passed away, and, although she was prepared to take the testing for certification, Martin would not let her take the test.  See Diaz Aff. ¶ 7, 3-4; Response at 8.  In its Reply, the City of Tucumcari does not dispute these assertions, but argues that "these ad hoc rationalizations are not relevant or material."  Reply at 2.  The City of Tucumcari also notes that there is "no record of Plaintiff challenging any of the warnings instructing her to improve her performance in the three areas listed in the corrective action form," and that Diaz cannot show "that Ms. Martin acted in an unfair or discriminatory manner."  Reply at 2.  Whether this fact is relevant is a legal argument, however, and the Court will not address that argument at this time, but will

contract would be sent to the landlord for a signature, and a copy of the unsigned lease and contract would be in the file until the landlord returned the signed lease.  <u>See</u> Diaz Aff. ¶ 7, at 3-4; Response at 8 (setting forth this fact).[15] Second, Diaz states that she never disclosed personal information about any clients with the housing program.  <u>See</u> Diaz Aff. ¶ 7, at 3-4; Response at 8 (setting forth this fact).[16]  For nine months, there was no director assigned, and the program was running smoothly.

_____

consider it in its legal analysis.  <u>See</u> <u>Ruiz v. City of Brush</u>, No. 05-897, 2006 WL 1816454, at *4 (D. Colo. June 30, 2006)("[T]he 'sole purpose' of the required statements of and responses to undisputed material facts is 'to establish facts and determine which of them are in dispute[;] [l]egal argument should be reserved for separate portions of the brief.'")(citation omitted).  Because the City of Tucumcari has not specifically controverted the asserted fact, that Diaz did not need to improve in any of these three areas, the Court will deem this fact admitted.  <u>See</u> D.N.M.LR-Civ. 56.1(b).

[15]The City of Tucumcari does not appear to dispute this fact, that the original lease and contract were sent to the landlord for signature, but until the landlord returned the signed lease, a copy of the unsigned lease and contract would remain in the file.  <u>See</u> Reply at 2.  In its Reply, the City of Tucumcari does not dispute this assertion, but argues that "these ad hoc rationalizations are not relevant or material."  Reply at 2.  The City of Tucumcari also notes that there is "no record of Plaintiff challenging any of the warnings instructing her to improve her performance in the three areas listed in the corrective action form" and that Diaz cannot show "that Ms. Martin acted in an unfair or discriminatory manner."  Reply at 2.  Whether this fact is relevant is a legal argument, however, and the Court will not address that argument at this time, but will consider it in its legal analysis.  <u>See</u> <u>Ruiz v. City of Brush</u>, 2006 WL 1816454, at *4.  Because the City of Tucumcari has not specifically controverted the asserted fact, that the original lease and contract were sent to the landlord for signature, but until the landlord returned the signed lease, a copy of the unsigned lease and contract would remain in the file, the Court will deem this fact admitted.  <u>See</u> D.N.M.LR-Civ. 56.1(b).

[16]The City of Tucumcari does not appear to dispute this fact, that Diaz never disclosed personal information regarding any clients with the Housing Program.  <u>See</u> Reply at 2.  In its Reply, the City of Tucumcari does not dispute this assertion, but argues that "these ad hoc rationalizations are not relevant or material."  Reply at 2.  The City of Tucumcari also notes that there is "no record of Plaintiff challenging any of the warnings instructing her to improve her performance in the three areas listed in the corrective action form," and that Diaz cannot show "that Ms. Martin acted in an unfair or discriminatory manner."  Reply at 2.  Whether this fact is relevant is a legal argument, however, and the Court will not address that argument at this time, but will consider it in its legal analysis.  <u>See</u> <u>Ruiz v. City of Brush</u>, 2006 WL 1816454, at *4.  Because the City of Tucumcari has not specifically controverted the asserted fact that Diaz never disclosed personal information regarding any clients with the Housing Program, the Court will deem this fact admitted.  <u>See</u>

<u>See</u> Diaz Aff. ¶ 7, at 3-4; Response at 8 (setting forth this fact).[17]  During that period, the City of Tucumcari had two maintenance persons to clean apartments and to repair anything that needed to be fixed, a bookkeeper, an inspector, and Diaz, as Program Specialist for both the Section 8 and Public Housing Authority Programs.  <u>See</u> Diaz Aff. ¶ 7, at 3-4; Response at 8 (setting forth this fact).[18]  Third, at the time of the certification workshop, Diaz' mother passed away; Diaz was prepared to take the testing for certification, but Martin would not let her take the test.  <u>See</u> Diaz Aff. ¶ 7, at 3-4; Response at 8 (setting forth this fact).[19]

After being written up for her conversation with the former Commissioner, Diaz on

---

D.N.M.LR-Civ. 56.1(b).

   [17]The City of Tucumcari does not refer to this fact, that, for nine months, there was no director and the program ran smoothly, in its Reply.  Because the City of Tucumcari has not attempted to specifically controvert the asserted fact, the Court will deem this fact admitted.  <u>See</u> D.N.M.LR-Civ. 56.1(b).

   [18]The City of Tucumcari does not refer to this fact, that during that period when there was no director, the City of Tucumcari had two maintenance persons to clean apartments and to repair anything that needed to be fixed, a bookkeeper, an inspector, and Diaz, as Program Specialist for both the Section 8 and Public Housing Authority Programs, in its Reply.  Because the City of Tucumcari has not attempted to specifically controvert the asserted fact, the Court will deem this fact admitted.  <u>See</u> D.N.M.LR-Civ. 56.1(b).

   [19]The City of Tucumcari does not appear to dispute this fact that, at the time of the certification workshop, despite her mother's death, Diaz was prepared to take the testing for certification and that Martin would not let her take the test.  In its Reply, the City of Tucumcari does not dispute these assertions, but argues that "these ad hoc rationalizations are not relevant or material."  Reply at 2.  The City of Tucumcari also notes that there is "no record of Plaintiff challenging any of the warnings instructing her to improve her performance in the three areas listed in the corrective action form," and that Diaz cannot show "that Ms. Martin acted in an unfair or discriminatory manner."  Reply at 2.  Whether this fact is relevant is a legal argument, however, and the Court will not address that argument at this time, but will consider it in its legal analysis.  <u>See</u> <u>Ruiz v. City of Brush</u>, 2006 WL 1816454, at *4.  Because the City of Tucumcari has not specifically controverted the asserted fact that, at the time of the certification workshop, despite her mother's death, Diaz was prepared to take the testing for certification, and Martin would not let her take the test, the Court will deem this fact admitted.  <u>See</u> D.N.M.LR-Civ. 56.1(b).

September 24, 2009, filed a grievance and a complaint/claim with the United States Equal Employment Opportunity Commission ("EEOC") and with the New Mexico Human Rights Division ("NMHRD"), contending that she had been discriminated against on the basis of her race, specifically for speaking Spanish. <u>See</u> Charge of Discrimination at 13 (dated September 24, 2009), filed August 5, 2011 (Doc. 23-1)("Sept. 24, 2009 Charge of Discrimination"); Mem. MSJ ¶ 8, at 3 (setting forth this fact); Response at 9 (not disputing this fact).   She identified the alleged discriminatory behavior occurred from July 16, 2009 to September 11, 2009. <u>See</u> Sept. 29, 2009 Charge of Discrimination at 13; Mem. MSJ ¶ 8, at 3 (setting forth this fact); Response at 9 (not disputing this fact).   On November 3, 2009, Diaz and the City of Tucumcari's representatives went to and participated in a mediation on the EEOC claim and on the New Mexico Human Rights Division claim, and, as a result, the parties entered into a settlement agreement. <u>See</u> Complaint ¶ 17, at 4; Settlement Agreement at 16 (dated November 3, 2009), filed August 5, 2011 (Doc. 23-1); Mem. MSJ ¶ 9, at 3 (setting forth this fact); Response at 9 (not disputing this fact).   Diaz agreed to dismiss her claims of discrimination as part of that agreement. <u>See</u> Settlement Agreement at 16-17; Mem. MSJ ¶ 9, at 3 (setting forth this fact); Response at 9 (not disputing this fact).   Given the settlement, no notice of right to sue was issued on this charge. <u>See</u> Settlement Agreement at 16-17; Mem. MSJ ¶ 9, at 3 (setting forth this fact); Response at 9 (not disputing this fact).

The City of Tucumcari maintains that, despite the warnings that Diaz had received on September 11, 2009, and for reasons unconnected with her earlier claim of discrimination, Diaz continued to exhibit performance problems, including refusing to apply the financial guidelines. <u>See</u> Electronic Mail from Wilhemina Martin to Clara Rey at 19 (dated October 13, 2009), filed August 5, 2011 (Doc. 23.1) ("Oct. 13, 2009 Email"); Letter from Wilhemina Martin to Hermalinda Diaz at

20 (dated October 20, 2009), filed August 5, 2011 (Doc. 23-1)("Oct. 20, 2009 Letter"); Electronic

Mail from Wilhemina Martin to Clara Rey at 21 (dated October 21, 2009), filed August 5, 2011

(Doc. 23-1)("Oct. 21, 2009 Email"); Electronic Mail from Wilhemina Martin to Clara Rey  (dated

October 22, 2009), filed August 5, 2011 (Doc. 23-1)("Oct. 22, 2009 Email"); Electronic Mail from

Wilhemina Martin to Bobbye Rose (dated October 23, 2009), filed August 5, 2011 (Doc. 23-1)("Oct.

23, 2009 Email"); Electronic Mail from Wilhemina Martin to Hermalinda Diaz  (dated November

9, 2009), filed August 5, 2011 (Doc. 23-1)("Nov. 9, 2011 Email"); Electronic Mail from Viki Riddle

to Wilhemina Martin (dated November 11, 2009), filed August 5, 2011 (Doc. 23-1)("Nov. 11, 2009

Email"); Electronic Mail from Wilhemina Martin to Hermalinda Diaz (dated November 20, 2009),

filed August 5, 2011 (Doc. 23-1)("Nov. 20, 2009 Email 1"); Electronic Mail from Wilhemina Martin

to Hermalinda Diaz (dated November 20, 2009), filed August 5, 2011 (Doc. 23-1)("Nov. 20, 2009

Email 2"); Mem. MSJ ¶ 10, at 3 (setting forth this fact).[20]  Diaz was the only Program Specialist, and

---

[20]Diaz disputes paragraph 10 of the MSJ, which states that Diaz continued to experience performance problems.  See Response at 9.  Diaz states that: (i) she was the only Program Specialist, and was taking care of the Section 8 and Public Housing Authority programs; (ii) Viki Riddle was hired as a bookkeeper, and, during one lunch break, the Public Housing Authority files were moved into Riddle's office; (iii) Riddle began signing documents "PHA Manager" and bossing Diaz around; (iv) Martin and Riddle began harassing Diaz; (v) during this time, Diaz' mother was very ill and Diaz would go home at lunch breaks to check on her; (vi) Martin would send electronic mail transmissions to Diaz regarding disputed electronic mail transmissions; (vii) Martin would attempt to complete Diaz' work; and (viii) Martin would interrupt Diaz and cause Diaz to fall behind on getting her work completed.  Diaz Aff. ¶ 10, at 4-5; Response at 10.  These assertions do not directly relate to, and do not controvert, the asserted fact that Diaz continued to experience performance problems.  Diaz' assertion that she fell behind on completing her work because Martin interrupted her supports the City of Tucumcari's asserted fact that Diaz continued to experience job performance problems.  The Court views Diaz' assertions in her Response as additional facts for the Court to consider and will deem them admitted unless the City of Tucumcari specifically controverts them.  Diaz did not, however, specifically controvert the City of Tucumcari's asserted fact, that Diaz continued to experience job performance problems, and the Court will deem that fact admitted. See D.N.M.LR-Civ. 56.1(b).

was taking care of the Section 8 and the Public Housing Authority programs.  See Diaz Aff. ¶ 10, at 4-5; Response at 9-10 (setting forth this fact).[21]  Viki Riddle was hired as a bookkeeper, and during a lunch break, the Public Housing Authority files were moved to her office.  See Diaz Aff. ¶ 10, at 4-5; Response at 9-10 (setting forth this fact).[22]  Riddle signed documents as "PHA Manager" and bossed Diaz around even though Riddle had only been working there for approximately six months.  Diaz Aff. ¶ 10, at 4-5; Response at 10 (setting forth this fact).[23]  During this time, Diaz' mother was very ill,[24] and Diaz would go home for lunch breaks to check on her.

---

[21]The City of Tucumcari does not refer to this fact, that Diaz was the only Program Specialist, and was taking care of the Section 8 and the Public Housing Authority programs, in its Reply.  Because the City of Tucumcari has not attempted to specifically controvert the asserted fact, the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1(b).

[22]The City of Tucumcari does not refer to this fact, that Riddle was hired as a bookkeeper and moved the Public Housing Authority files into her office, in its Reply.  Because the City of Tucumcari has not attempted to specifically controvert the asserted fact, the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1(b).

[23]The City of Tucumcari does not appear to dispute the asserted facts that Riddle signed documents as PHA Manager or that she bossed Diaz around.  See Reply at 3.  In its Reply, the City of Tucumcari argues that "Plaintiff's vague statements fail to present any genuine issues of material fact that would defeat Tucumcari's motion."  Reply at 2.  Because the City of Tucumcari does not attempt to specifically controvert Diaz' asserted facts, that Riddle signed documents as PHA Manager or that she bossed Diaz around, the Court will deem these facts admitted.  See D.N.M.LR-Civ. 56.1(b).

[24]The Court cannot determine where in the chronology the illness and death of Diaz' mother occurred.  Diaz appears to assert that her mother passed away sometime before September 11, 2009, because she states that this family problem was one of the factors related to her not taking the certification workshop.  See Response at 8.  Responding to allegations that she continued to experience performance problems after September 11, 2009, Diaz stated that her mother was very ill and that she would go home for lunch breaks to check on her.  See Response at 10.  Diaz' two asserted facts are in tension, and the Court does not have sufficient information to resolve this conflict.  The City of Tucumcari does not refer to this conflict in its Reply.  See Reply at 1-6.  Because the Court cannot determine the proper chronology, it has presented Diaz' asserted facts as Diaz presented them in her Response.

See Diaz Aff. ¶ 10, at 4-5; Response at 9-10 (setting forth this fact).[25]  Martin and Riddle would

harass her.  See Diaz Aff. ¶ 10, at 4-5; Response at 9-10 (setting forth this fact).[26]  Martin would

send electronic mail to Diaz regarding disputed electronic mail transmissions.  See Diaz Aff. ¶ 10,

at 4-5; Response at 9-10 (setting forth this fact).[27] Martin would try to complete Diaz' work, and

Martin would interrupt Diaz causing Diaz to fall behind on her work.  See Diaz Aff. ¶ 10, at 4-5;

Response at 9-10 (setting forth this fact).[28]

---

[25]The City of Tucumcari does not appear to dispute the asserted fact that Diaz would go home on lunch breaks to check on her ill mother.  The City of Tucumcari argues that, given the number of electronic mail transmissions sent and the severity of Diaz' errors, Diaz' asserted facts do not establish pretext for discrimination.  See Reply at 3.  The City of Tucumcari also contends: "Plaintiff's vague statements fail to present any genuine issues of material fact that would defeat Tucumcari's motion."  Reply at 3.  The City of Tucumcari does not present any evidence to controvert Diaz' asserted fact.  Because the City of Tucumcari does not specifically controvert the asserted fact, that Diaz would go home on lunch breaks to check on her ill mother, the Court will deem the fact admitted.  See D.N.M.LR-Civ. 56.1(b).

[26]The City of Tucumcari does not refer to this fact that Martin and Riddle would harass Diaz, in its Reply.  Because the City of Tucumcari has not attempted to specifically controvert the asserted fact, the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1(b).

[27]The City of Tucumcari does not dispute Diaz' asserted fact that Martin would send electronic mail transmissions to Diaz regarding disputed electronic mail transmissions.  See Reply at 3.  The City of Tucumcari argues: "Plaintiff's Response fails to establish that the performance problems documented in the numerous e-mails and memoranda were not legitimate issues for a supervisor to bring to the attention of an employee."  Reply at 3.  The City of Tucumcari also contends that Diaz' assertion does not create a genuine issues of material fact that would defeat its MSJ.  See Reply at 3.  The City of Tucumcari does not present any evidence to controvert Diaz' asserted fact.  Because the City of Tucumcari does not specifically controvert the asserted fact that Martin would send electronic mail transmissions to Diaz regarding disputed electronic mail transmissions, the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1(b).

[28]The City of Tucumcari does not appear to dispute the asserted facts that Martin would try to complete Diaz' work and would interrupt Diaz, causing Diaz to fall behind on her work.  The City of Tucumcari argues that, given the number of electronic mail transmissions sent and the severity of Diaz' errors, Diaz' asserted facts do not establish pretext for discrimination.  See Reply at 3.  The City of Tucumcari also contends: "Plaintiff's vague statements fail to present any genuine issues of material fact that would defeat Tucumcari's motion."  Reply at 3.  The City of Tucumcari does not present any evidence to controvert Diaz' asserted fact.  Because the City of Tucumcari does not

On November 30, 2009, Diaz was terminated from her position as Program Specialist.  See Letter to Hermalinda Diaz from Wilhemina Martin at 28 (dated November 30, 2009), filed August 5, 2011 (Doc. 23-1)("Discharge Letter"); Mem. MSJ ¶ 11, at 4 (setting forth this fact); Response at 5 (not disputing this fact).  Diaz' counsel wrote a letter asking for more details about the reasons for her termination.  See Letter to Dennis Montoya from Clara Rey at 29-30 (dated January 6, 2010), filed August 5, 2011 (Doc. 23-1)("Jan. 6, 2010 Letter"); Mem. MSJ ¶ 11, at 4 (setting forth this fact); Response at 10 (not disputing this fact).  Those details were provided on January 6, 2010, which was before a post-termination hearing.  See Jan. 6, 2010 Letter at 29-30; Mem. MSJ ¶ 11, at 4 (setting forth this fact); Response at 10 (not disputing this fact).

On February 2, 2010, Diaz filed a charge of retaliation, contending that she was fired for making the September 24, 2009 EEOC complaint.  See Charge of Discrimination at 31 (dated February 2, 2010), filed August 5, 2011 (Doc. 23-1)("Feb. 2, 2010 Charge of Discrimination"); Mem. MSJ ¶ 13, at 4 (setting forth this fact); Response at 11 (not disputing this fact).  The EEOC found that there was insufficient evidence to establish a violation and issued a right to sue letter on October 29, 2010.  See EEOC Dismissal and Notice of Rights at 32 (dated October 29, 2009), filed August 5, 2011 (Doc. 23-1); Mem. MSJ ¶ 13, at 4 (setting forth this fact); Response at 11 (not disputing this fact).

## PROCEDURAL BACKGROUND

Diaz filed her Complaint on January 26, 2011.  In her Complaint, Diaz charges that the reason for her termination as Program Specialist was for the actions that she took against Martin and

---

specifically controvert the asserted facts, that Martin would try to complete Diaz' work and would interrupt Diaz, causing Diaz to fall behind on her work, the Court will deem the fact admitted. See D.N.M.LR-Civ. 56.1(b).

the City of Tucumcari in her September 24, 2009 Charge of Discrimination.  <u>See</u> Complaint ¶ 9, at 4.  Diaz further charges that she has been treated in a discriminatory manner in her employment and has suffered damages as a consequence of this treatment.  <u>See</u> Complaint ¶ 21, at 4.  Her Complaint consists of three counts: (i) Count I alleges racial discrimination under Title VII; (ii) Count II alleges racial discrimination under the NMHRA; and (iii) Count III alleges retaliation under the NMHRA. <u>See</u> Complaint ¶¶ 22-30, at 5-6.  At paragraph 8 of her Complaint, Diaz refers to her "First Amendment rights," but does not appear to make a claim for retaliation other than that which is the subject of her NMHRA claim.  <u>See</u> Complaint ¶ 8, at 2.  In the Joint Status Report, Diaz does not refer to her First Amendment claim.

The City of Tucumcari, pursuant to rule 56 of the Federal Rules of Civil Procedure, filed a motion for summary judgment on August 5, 2011.  <u>See</u> Doc. 22.  The City of Tucumcari accompanied its motion for summary judgment with a supporting memorandum brief and with supporting case law.  <u>See</u> Doc. 23.  The City of Tucumcari contends that it is entitled to summary judgment on all claims and moves for summary judgment on all claims.  <u>See</u> Mem. MSJ at 1.  The City of Tucumcari argues that Diaz fails to set forth any evidence of racial discrimination to support Counts I and II, and that, in any event, the doctrine of accord and satisfaction bars those claims. <u>See</u> Mem. MSJ at 1.  As to Count III, the City of Tucumcari states that all actions of which Diaz complains were based on legitimate, non-retaliatory reasons.  <u>See</u> Mem. MSJ at 1.

Arguing that accord and satisfaction bars Diaz' race discrimination claims, the City of Tucumcari asserts that the record demonstrates that Diaz voluntarily participated in mediation and that she entered into a binding Settlement Agreement, which she signed on November 3, 2009. <u>See</u> Mem. MSJ at 6.  The City of Tucumcari argues that, because her September 24, 2009 Charge

of Discrimination listed July 16, 2009 through September 11, 2009 as the dates of discriminatory conduct, the Settlement Agreement bars her from claiming any discrimination on or before that date. See Mem. MSJ at 6-7.  In the alternative, the City of Tucumcari argues that Diaz fails to produce any evidence of race discrimination.  See Mem. MSJ at 7.  The City of Tucumcari contends that, with respect to her allegations of race discrimination, Diaz has not established her prima-facie case. See Mem. MSJ at 7-8.  Turning to Diaz' retaliation claim, the City of Tucumcari asserts that it had legitimate, non-retaliatory reasons for terminating her employment.  See Mem. MSJ at 8.  The City of Tucumcari concedes that Diaz engaged in protected activity and that a termination is materially adverse.  See Mem. MSJ at 8-9.  The City of Tucumcari argues, however, that temporal proximity, standing alone, does not establish a genuine issue of material fact.  See Mem. MSJ at 9. Furthermore, the City of Tucumcari asserts that it is has established that Diaz' performance was sub-par and that Diaz cannot use the filing of a charge as a shield that would prevent her termination under any circumstances.  See Mem. MSJ at 9.

     Diaz failed to timely respond to the motion within the allotted time and did not request an extension of time to respond to the motion.  On August 26, 2011, the City of Tucumcari filed a Notice of Completion of Briefing, notifying the Court that briefing is complete on its motion for summary judgment and that the motion is ready for decision.  See Doc. 24.  The City of Tucumcari requested again that the Court grant its motion.  See Notice of Completion of Briefing at 1.  Diaz filed an Unopposed Motion to Accept Late Filing of Plaintiff's Response to Summary Judgment Motion on August 29, 2011.  See Doc. 25.  The Court on August 28, 2011, entered an Order Granting Unopposed Motion to Accept Late Filing of Plaintiff's Response to Summary Judgment Motion.  See Doc. 32.  The Court agreed to accept Diaz' Response to the Motion for Summary

Judgment as timely.  Thus, the motion to accept the late filing accompanied Diaz' response.

On August 29, 2011, Diaz filed the Response by Plaintiff Hermalinda Diaz to Defendant's Motion for Summary Judgment.  <u>See</u> Doc. 26.  Diaz argues that, in light of the many allegations that are disputed and given the deferential standard favoring her as the non-moving party, the Court must deny the MSJ.  <u>See</u> Response at 4.

On September 15, 2011, the City of Tucumcari filed its Reply.  <u>See</u> Doc. 30.  The City of Tucumcari points out that Diaz failed to respond to the legal argument that the Settlement Agreement bars her race discrimination claims.  <u>See</u> Reply at 4.  The City of Tucumcari argues that Diaz' failure to refute this argument should lead the Court to find that accord and satisfaction bars any race discrimination claims arising before September 11, 2009.  <u>See</u> Reply at 4.  With respect to the merits of Diaz' race discrimination claims, the City of Tucumcari argues that Diaz failed to show that her job performance was satisfactory or that similarly situated employees were treated differently.  <u>See</u> Reply at 4.  Turning to the retaliation claim, the City of Tucumcari contends that Diaz has not met her burden of showing that its reasons for her termination were pretextual.  <u>See</u> Reply at 5.  The City of Tucumcari asserts that Diaz has failed to demonstrate a genuine issue of material fact suggesting that its actions were discriminatory or retaliatory.  <u>See</u> Reply at 5.

The Court held a hearing on November 30, 2011.  Counsel for both parties appeared telephonically.  To start the hearing, the Court began asking Diaz about her Complaint and claims. <u>See</u> Transcript of Hearing at 3:14-18 (November 30, 2011)(Court)("Tr.").[29]  The Court asked whether Diaz agreed that the mediated settlement would cut off liability for the racial or national

---

[29]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

origin discrimination claims before the date of that settlement agreement, November 3, 2009.
See Tr. at 4:1-11 (Court).  After the Court clarified that it was not suggesting that the settlement
would cut off liability for any retaliation claim, Diaz conceded that she "tend[s] to agree with the
Court's analysis on that."  Tr. at 4:12-5:1 (Court, Juarez).  The Court also clarified that it was not
suggesting that events before November 3, 2009 could not be used as evidence of discrimination
which took place after that date.  See Tr. at 5:2-8 (Court).  Diaz stated that, with the Court's
clarification, she would agree that there was an accord and satisfaction which bars any claim for
conduct occurring before November 3, 2009.  See Tr. at 5:16-23 (Court, Juarez).  The Court then
asked if Diaz would agree that the time period for her claims of race discrimination are from
November 3, 2009 until she was terminated on November 30, 2009.  See Tr. at 5:23-6:4 (Court).
Diaz conceded that the Court was correct.  See Tr. at 6:5 (Juarez).  The Court then turned to Diaz'
prima-facie case and asked what evidence there is that during those twenty-seven days, Diaz
suffered disparate treatment among similarly situated employees.  See Tr. at 6:6-14 (Court).  Diaz
responded that the question was difficult, because she was the only one in her position.  See Tr. at
6:15-17 (Juarez).  Diaz asserted that the disparate treatment arose in the manner that she was treated
and how certain job functions were transferred to other people.  See Tr. at 6:17-20 (Juarez).  The
Court also asked whether Diaz would agree that there is no First-Amendment claim.  See Tr. at 7:17-
19 (Court).  Diaz agreed that there was no First-Amendment claim and that the language in the
Complaint which the Court referenced was in relation to the Spanish-speaking claim that Diaz
settled.  See Tr. at 7:20-24 (Court, Juarez).  Finally, the Court asked whether it was correct in
viewing the retaliation claim as arising only under the NMHRA.  See Tr. at 8:1-4 (Court).  Diaz
agreed that she alleged retaliation only under the NMHRA.  See Tr. at 8: 5-6 (Juarez).

The Court stated that its inclination was that there was no federal discrimination claim, and asked whether it ought to remand the state claims and the case if it granted summary judgment in favor of the City of Tucumcari on the Title VII race discrimination claim. See Tr. at 8:7-17 (Court). The City of Tucumcari stated that it did not believe that this case was removed. See Tr. at 9:2-3 (Anderman). The Court asked whether there would be any statute-of-limitations issues for Diaz if it followed that course of action. See Tr. at 9:5-12 (Court). Diaz responded that she did not think there would be any statute-of-limitations problems, because there was appropriate notice. See Tr. at 9:13-16 (Juarez). The Court then stated that each party would have the opportunity to argue the motion. See Tr. at 10:8-15 (Court).

The City of Tucumcari stated that it did not have anything more to argue on the issue of accord and satisfaction, as it understood that Diaz was acknowledging that it there could be no race discrimination claims for conduct occurring before November 3, 2009. See Tr. at 10:16-20 (Anderman). The City of Tucumcari represented that it did not understand what evidence of discrimination or retaliation exists for the period from November 3, 2009 to the date of Diaz' termination. See Tr. at 11:14-16 (Anderman). Addressing the standard for a prima-facie case, the City of Tucumcari argued that, under the test from Orr v. City of Albuquerque, 417 F.3d 1144 (10th Cir. 2005), Diaz would need to establish: (i) that she is a member of a protected class, which the City of Tucumcari concedes, because she is Hispanic; (ii) that she has suffered an adverse employment action, which it concedes, because she was terminated from her position; and (iii) that she suffered disparate treatment among similarly situated employees, which the City of Tucumcari argues Diaz cannot establish. See Tr. at 11:17-22 (Anderman). The City of Tucumcari clarified that its argument, in its Motion for Summary Judgment, that there was no adverse employment action

related to the speaking-Spanish claim, which is no longer at issue.  See Tr. at 11:24-12:17 (Court, Anderman).  The City of Tucumcari conceded that, focusing on the last twenty-seven days of Diaz' employment, her termination would be considered an adverse employment action.  See Tr. at 11:18-24 (Court, Anderman).  Addressing whether Orr v. City of Albuquerque provides the correct standard, the City of Tucumcari stated that it and Diaz were in agreement that whether similarly situated employees were treated differently is an element of the prima-facie discrimination case.  See Tr. at 14:10-13 (Anderman).  The City of Tucumcari argued that it did not see any evidence in the record of discrimination during the twenty-seven day period at issue.  See Tr. at 14:14-17 (Court, Anderman).  It asserted that Diaz was already on notice of performance issues before she filed her Charge of Discrimination.  See Tr. at 14:17-21 (Anderman).  The City of Tucumcari contended that Diaz' termination was consistent with her poor performance and that there was no pretext for discrimination.  See Tr. at 15:1-7 (Anderman).  Furthermore, the City of Tucumcari argued that, under the test set forth in Diaz' Response, an element of the prima-facie case is that job performance was satisfactory and it asserted Diaz cannot establish that fact.  See Tr. at 15:8-15 (Anderman).

Turning to the claim of retaliation, the City of Tucumcari conceded that Diaz engaged in protected activity, because she filed a charge with the EEOC.  See Tr. at 16:10-16 (Anderman).  The City also conceded that Diaz was subject to an adverse employment action, because she was terminated.  See Tr. at 16:16-19 (Anderman).  The key, according to the City of Tucumcari, is whether a causal connection exists between the protected activity and the adverse employment action, which the City of Tucumcari argued there was not.  See Tr. at 16:20-25 (Anderman).  The City of Tucumcari asserted that the temporal proximity between the two actions does not preclude summary judgment in its favor and that no reasonable fact-finder, given the history of the

progressive discipline that took place, could reasonably infer that there was retaliation based on nothing more than the timing.  See Tr. at 17:3-10 (Anderman).  The City of Tucumcari argued that, even if Diaz could establish a prima facie case of retaliation, it has offered a legitimate, non-retaliatory reason for her dismissal and that Diaz has set forth no evidence that she was treated differently than similarly situated employees.  See Tr. at 17:18-25 (Anderman).  Responding to arguments raised in Diaz' briefing, the City of Tucumcari argued that all Diaz states in her brief is that she did not commit the conduct for which she was terminated.  See Tr. at 18:1-4 (Anderman).  The City of Tucumcari asserted that whether she committed those acts is not the issue, that she did not make any showing that she informed her supervisor that she did not act in that manner, and that human resources provided Diaz with lots of information concerning why she was terminated.  See Tr. at 18:4-11 (Anderman).  The City of Tucumcari reiterated that there was no evidence of pretext, which is the plaintiff's burden.  See Tr. at 18:12-17 (Anderman).  The Court asked the City of Tucumcari what its thoughts were on dismissing the state claims, if the Court found that summary judgment was appropriate on the federal claim.  See Tr. at 18:18-23 (Court).  The City of Tucumcari responded that it would make things more difficult for the parties and that, because the Court has discretion, it would prefer that the Court decide the state claims as well.  See Tr. at 18:24-19:9 (Anderman).

Diaz then argued against summary judgment on the retaliation claim.  Diaz asserted that there are factual disputes whether she was retaliated against, given the manner in which other employees interacted with her and the employment environment leading up to her dismissal.  See Tr. at 20:13-20 (Juarez).  Diaz contended that there is at least arguable evidence of retaliation and asked whether there was time for the issues leading to her previous Charge of Discrimination to

correct themselves.  <u>See</u> Tr. at 20:20-21:2 (Juarez).  Furthermore, Diaz argued, with respect to the

state claims, that if the Court resolves the federal issues in the City of Tucumcari's favor, then the

Court should dismiss the state claims without prejudice so that the state court may address them.

<u>See</u> Tr. at 21:3-16 (Juarez).

## LEGAL STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial

burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case."

<u>Bacchus Indus., Inc. v. Arvin Indus., Inc.</u>, 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation

marks omitted).  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the movant meets

this burden, rule 56 requires the non-moving party to designate specific facts showing that there is

a genuine issue for trial.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 324; <u>Anderson v. Liberty Lobby,</u>

<u>Inc.</u>, 477 U.S. 242, 256 (1986).

The party opposing a motion for summary judgment must "set forth specific facts showing

that there is a genuine issue for trial as to those dispositive matters for which it carries the burden

of proof."  <u>Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.</u>, 912 F.2d 1238, 1241 (10th Cir.

<u>See</u> <u>Vitkus v. Beatrice Co.</u>, 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party

may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue

for trial as to those dispositive matters for which it carries the burden of proof.")(internal quotation

marks omitted)).  Rule 56(c)(1) provides:

> A party asserting that a fact . . . is genuinely disputed must support the assertion
> by . . . . citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.

Fed. R. Civ. P. 56(c)(1).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his [or her] pleadings." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, 'once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.'" (citation omitted)).  Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(citing Fed. R. Civ. P. 56(e); Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)).  "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.  A mere "scintilla" of evidence will not avoid summary judgment. Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  Rather, there must be sufficient evidence on which the fact-finder could reasonably find for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co.

v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted). Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind three principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249. Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party. See Hunt v. Cromartie, 526 U.S. at 550-55; Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). Third, the court cannot decide any issues of credibility. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

## LAW REGARDING SETTLEMENT OF EMPLOYMENT DISCRIMINATION CLAIMS

Voluntary settlement of employment discrimination claims is one of the purposes of the EEOC administrative process. See Carson v. Am. Brands, Inc., 450 U.S. 79, 88 n. 14 (1981). For this reason, voluntary compromises of Title VII claims are presumed valid. See, e.g., Kirkland v. N.Y.S. Dep't of Corr. Servs., 711 F.2d 1117, 1128-29 (2d Cir. 1983), cert. denied, 465 U.S. 100 (1984). "An aggrieved employee who voluntarily settles a claim waives his right to bring a

subsequent employment discrimination suit based on the same fact situation." Johnson v. Frank, 828 F.Supp. 1143, 1151-52 (S.D.N.Y. 1993)(finding a valid settlement agreement to bar subsequent litigation on that claim).  See Wrenn v. Sec'y Dep't of Veterans Affairs, 918 F.2d 1073, 1078 (2d Cir. 1990)("To allow claimants . . . to continue to pursue claims that have been fully remedied during the administrative process would frustrate the congressional policy favoring administrative resolution of complaints for no discernible reason."), cert. denied, 499 U.S. 977 (1991).  The United States Court of Appeals for the Tenth Circuit has also recognized that a settlement agreement will bar litigation of claims resolved in the settlement agreement.  See Logan v. Principi, 56 F.App'x 445, 448 (10th Cir. 2003)(unpublished)("To summarize, plaintiff's first count for discrimination under 42 U.S.C. § 2000e-16, was properly subject to dismissal as barred by the original settlement agreement insofar as it attempted to renew her original discrimination claim . . . .").  The United States Court of Appeals for the Eleventh Circuit also prohibited the litigation of claims addressed in a settlement agreement.  See Vinnett v. Gen. Elec. Co., 271 F.App'x 908, 913 (11th Cir. 2008)(unpublished)("Because Vinnett released all of his discrimination and retaliation claims arising before the settlement agreement was executed, his claims of discrimination and retaliation arising during his employment with GE are barred.").

## LAW REGARDING RACIAL DISCRIMINATION UNDER TITLE VII

"Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on race, color, religion, sex, or national origin."  Brown v. Gen. Servs. Admin., 425 U.S. 820, 825 (1976)(citing 42 U.S.C. §§ 2000e-2, 2000e-3).  "Title VII of the Civil Rights Act of 1964 prohibits an employer from failing or refusing to hire or discharging any individual, or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's race, color, religion, sex, or national origin."

Farley v. Leavitt, No. 05-1219, 2007 WL 6364329, at *6 (D.N.M. Dec. 31, 2007)(Browning,

J.)(quoting 42 U.S.C. § 2000e-2(a)(1))(alterations omitted)(internal quotation marks omitted).

For Title VII claims, at the summary-judgment stage, the nonmoving party must come forth

with some proof of discrimination, either by demonstrating direct evidence of the employer's

discriminatory intent or, "[u]nder McDonnell Douglas, [411 U.S. 792 (1973)] . . . by providing

circumstantial rather than direct evidence of [intentional] discrimination." Jones v. Oklahoma City

Public Schools, 617 F.3d 1273 (10th Cir. 2010). See Hare v. Denver Merch. Mart, Inc., 255

F.App'x 298, 301 (10th Cir. 2007)(unpublished)(citing McDonnell Douglas v. Green, 411 U.S. at

802).

### 1.  **Direct Evidence**.

"Direct evidence is evidence, which if believed, proves the existence of a fact in issue

without inference or presumption." Hall v. U.S. Dep't of Labor, 476 F.3d 847, 855 (10th Cir. 2007).

Moreover, "[d]irect evidence demonstrates on its face that the employment decision was reached

for discriminatory reasons." Danville v. Reg'l Lab Corp., 292 F.3d 1246, 1249 (10th Cir. 2002).

"When a plaintiff alleges that discriminatory comments constitute direct evidence of discrimination,

[the Tenth Circuit] has held that the plaintiff must demonstrate a nexus exists between the alleged

discriminatory statements and the . . . decision to terminate [the employee]." Negrete v. Maloof

Distrib. L.L.C., 762 F.Supp.2d 1254, 1280 (D.N.M. 2007)(Browning, J.)(internal quotations

omitted). "Direct evidence is that which demonstrates a specific link between the alleged

discriminatory animus and the challenged [employment] decision, sufficient to support a finding by

a reasonable fact finder that an illegitimate criterion actually motivated [the employer's] decision

to take the adverse employment action."  Deneen v. NW. Airlines, 132 F.3d 431, 436 (8th Cir. 1998).

### 2.    Indirect Evidence Under the McDonnell Douglas Corp. v. Green Framework.

A plaintiff may use indirect evidence to establish a case under Title VII.  See McDonnell Douglas Corp. v. Green, 411 U.S. at 802-803.  "[C]laims of age, race, national origin, gender discrimination, and retaliation are all subject to the burden shifting framework that the Supreme Court of the United States established in McDonnell Douglas Corp. v. Green."  Gamez v. Country Cottage Care and Rehab., 377 F.Supp.2d 1103, 1119 (D.N.M. 2005)(Browning, J.)(citing McDonnell Douglas Corp. v. Green, 411 U.S. at 802-804).  Under the McDonnell Douglas Corp. v. Green framework, a plaintiff must set forth a prima-facie case of discrimination.  See Kelly v. City of Albuquerque, 375 F.Supp.2d 1183, 1210 (D.N.M. 204)(Browning, J.).  If the plaintiff establishes a prima-facie case for any of his or her discrimination claims, "the burden shifts to the defendant to come forward with a legitimate nondiscriminatory reason for its employment related decision."  Mitchell v. City of Wichita, Kan., 140 F.App'x 767, 777 (10th Cir. 2005)(unpublished). "Upon the employer's articulation of a legitimate, nondiscriminatory reason . . . the presumption of discrimination established by the prima-facie case simply drops out of the picture."  Kelly v. City of Albuquerque, 375 F.Supp.2d at 1210 (internal quotation marks omitted).  The plaintiff then must present evidence that the defendant's proffered reason for the employment decision was pretextual. See Kelly v. City of Albuquerque, 375 F.Supp.2d at 1210 (citing Kendrick v. Penske Transp. Servs., Inc., 220 F.3d at 1230).

### a.    Prima-Facie Case of Discrimination.

In McDonnell Douglas Corp. v. Green, the Supreme Court established that:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination.  This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, that position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

411 U.S. at 802. The Supreme Court recognized that the "facts will necessarily vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations."  McDonnell Douglas Corp. v. Green, 411 U.S. at 802 n.13.  Although the "McDonnell Douglas factors were not cast as a rigid rule to apply to all factual situations, courts have adapted the formulation to fit cases involving claims of discriminatory discharge."  Brown v. Parker-Hannifin Corp., 746 F.2d 1407, 1409 (10th Cir. 1984).  The Tenth Circuit has held that to establish a prima facie case of discrimination a plaintiff must demonstrate that: (i) "she belonged to a protected class;" (ii) "she suffered an adverse employment action;" and (iii) "the challenged action took place under circumstances giving rise to an inference of discrimination."  Woods-Gatson v. Sequoyah Enter. Inc., 340 F.App'x 450, 452 (10th Cir. 2009)(unpublished).[30]  The Tenth Circuit has stated that the "critical prima facie inquiry

--------

[30]The language in the final element of this recitation of the prima-facie case comes from Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248(1981), where the Supreme Court explained: "The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of discrimination."  450 U.S. 253.  Although the Tenth Circuit has noted that this "language conflates the distinct steps of the McDonnell-Douglas inquiry," it does not impose an additional burden on the plaintiff.  Rather, the Court views the requirement that a plaintiff demonstrate that the adverse employment action took place under circumstances giving rise to an inference of the discrimination alleged as a catch-all provision.  The Court has also previously noted:

> The United States Court of Appeals for the Tenth Circuit has sometimes framed the third element more broadly as "circumstances giving rise to an inference of discrimination."  Sorbo v. United Parcel Serv., 432 F.3d 1169, 1173 (10th Cir.

in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.'"  Adamson v. Multi Cmty. Diversified Servs., Inc., 514 F.3d 1136, 1151 (10th Cir. 2008).  In Perry v. Woodward, 199 F.3d 1126 (10th Cir. 1999), the Tenth Circuit held that a plaintiff may establish a prima-facie case of discriminatory discharge by showing that: (i) she belongs to a protected class; (ii) she was qualified for her job; (iii) despite her qualifications, she was discharged; and (iv) the job was not eliminated after her discharge.  See 199 F.3d at 1138.

> The Tenth Circuit liberally
>
> defines the phrase adverse employment action. Such actions are not simply limited to monetary losses in the form of wages or benefits.  Instead, we take a case-by-case approach, examining the unique factors relevant to the situation at hand.  Although we do not deem a mere inconvenience or an alteration of job responsibilities to be an adverse employment action, the prong is satisfied by a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

Jones v. Oklahoma City Pub. Schs., 617 F.3d at 1279 (internal quotation marks omitted)(citations omitted).

--------

2005)(citations omitted).  This broader requirement may, however, be shown by proof that the employer treated similarly situated employees more favorably.  See id. at 1173.  Because the Plaintiffs have framed their prima facie case using the similarly situated element, the Court will discuss their prima facie case in terms of such element.

Barber v. Lovelace Sandia Health Systems, 409 F.Supp.2d 1313, 1328 n.6 (D.N.M. 2005)(Browning, J.).  This element is another way of stating what the Tenth Circuit has recognized in other cases -- that a Title VII plaintiff may establish a prima-facie case in a "number of ways," E.E.O.C. v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1195 n.6 (10th Cir. 2000), and that the plaintiff must only establish that a set of facts, which "if otherwise unexplained, are more likely than not based on the consideration of impermissible factors," Estate of Daramola v. Coastal Mart, Inc., 170 F.App'x 536, 541 (10th Cir. 2006)(unpublished)(citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 253).

> The relevant inquiry at the prima facie stage [regarding whether the employee was qualified for the position] is not whether an employee or potential employee is able to meet all the objective criteria adopted by the employer, but whether the employee has introduced some evidence that she possesses the objective qualifications necessary to perform the job sought.

E.E.O.C. v. Horizon/CMS Healthcare Corp., 220 F.3d at 1193.  "If an employee is able to introduce

such evidence, [he or] she has satisfied [the] prima facie burden of demonstrating that [he or] she

does not suffer from an 'absolute or relative lack of qualifications.'"  E.E.O.C. v. Horizon/CMS

Healthcare Corp., 220 F.3d at 1193-94 (citation omitted).  "Thus, a plaintiff has satisfied her prima

facie burden of showing she is qualified by presenting some credible evidence that she possesses

the objective qualifications necessary to perform the job at issue."  E.E.O.C. v. Horizon/CMS

Healthcare Corp., 220 F.2d at 1194 (citation omitted).  In E.E.O.C. v. Horizon/CMS Healthcare

Corp., the Tenth Circuit found that the EEOC "need only present some credible evidence that the

Charging Parties possessed the basic skills necessary to perform the [position at issue]."  E.E.O.C.

v. Horizon/CMS Healthcare Corp., 220 F.2d at 1194.

Explaining the final element of the prima facie case, the Tenth Circuit has noted that this

element may be satisfied in a "number of ways."  E.E.O.C. v. Horizon/CMS Healthcare Corp., 220

F.3d 1184, 1195 n.6 (10th Cir. 2000).  Accord Ortiz v. Norton, 254 F.3d 889, 897 (10th Cir. 2001).

One of those ways in a discriminatory discharge case is by showing that the job was not eliminated.

See Ortiz v. Norton, 254 F.3d at 897 (citations omitted).  The Tenth Circuit has also "stated that the

fourth element of the prima facie test is met if the discharged plaintiff can show that someone was

hired to replace her."  Perry v. Woodward, 199 F.3d 1126, 1138 (10th Cir. 1999)(citations omitted).

Ultimately, a plaintiff need only establish a set of facts, which "if otherwise unexplained, are more

likely than not based on the consideration of impermissible factors," Estate of Daramola v. Coastal

Mart, Inc., 170 F.App'x at 541 (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 253).

        **b.**        **Legitimate Nondiscriminatory Reason for Employment Decision.**

After the plaintiff establishes a prima-facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action. See McDonnell Douglas Corp v. Green, 411 U.S. at 802. "[T]he defendant's burden at this stage is one of production, not one of persuasion." Mirzai v. State of N.M. Gen. Servs. Dep't, 506 F.Supp.2d 767, 775 (D.N.M. 2007)(Browning, J.). "If the defendant is successful in articulating some legitimate, non-discriminatory reason, the presumption of discrimination established by the prima facie showing simply drops out of the picture." Mirzai v. State of N.M. Gen. Servs. Dep't, 506 F.Supp.2d at 775 (internal quotation marks and citation omitted). "The [defendant] need not persuade the court that it was actually motivated by the proffered reasons, but satisfies its burden merely by raising a genuine issue of fact as to whether it discriminated against the plaintiff." Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1425 (10th Cir.1993)(internal quotation marks omitted).

        **c.**        **Pretext as to the Proffered Legitimate Nondiscriminatory Reason.**

"Once the defendant meets its burden of production by offering a legitimate rationale in support of its employment decision, the burden shifts back again to the plaintiff to show that the defendant's proffered reasons were a pretext for discrimination." McDonnell Douglas, 411 U.S. at 804-05. "[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988).

The Tenth Circuit has stated that a plaintiff can show pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered

legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)(internal quotation marks and citation omitted).  See Hare v. Denver Merch. Mart, Inc., 255 F.App'x. at 304.  Although "a plaintiff may not be forced to pursue any particular means of demonstrating that a defendant's stated reasons are pretextual," Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000)(alterations omitted), pretext is typically shown in one of three ways:

> (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.

Green v. New Mexico, 420 F.2d 1189, 1193 (10th Cir. 2005).  See Wagoner v. Pfizer, Inc., No. 09-3066, 2010 WL 3199778, *5 (10th Cir. Aug. 12, 2010)("A plaintiff typically makes a showing of pretext with evidence that: (1) defendant's stated reason for the adverse employment action is false, (2) defendant acted contrary to a written policy, or (3) defendant acted contrary to an unwritten policy or practice.").  "The inquiry goes to the subjective belief of those making the termination decision;  '[t]he relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs.'" Hare v. Denver Merch. Mart, Inc., 255 F.App'x. at 304 (quoting Rivera v. City and County of Denver, 365 F.3d 912, 924-25 (10th Cir. 2004)).

"Evidence tending to show pretext permits an inference that the employer acted for discriminatory reasons."  Bryant v. Farmers Ins. Exch., 432 F.3d 1114, 1125 (10th Cir. 2005)(citation omitted).  At the summary judgment stage, "the inference of discrimination permitted

by evidence of pretext must be resolved in favor of the plaintiff." Bryant v. Farmers Ins. Exch., 432 F.3d at 1125 (citation omitted). "Thus, once a plaintiff presents evidence sufficient to create a genuine factual dispute regarding the veracity of a defendant's nondiscriminatory reason, we presume the jury could infer that the employer acted for a discriminatory reason and must deny summary judgment." Bryant v. Farmers Ins. Exch., 432 F.3d at 1125 (citation omitted).

The Tenth Circuit has stated that the "mere variety in reasons [for an employee's termination will] not alone undermine their credibility[;] [e]ach individual may consider a different reason to be the essential factor in a decision to terminate." Hare v. Denver Merch. Mart, Inc., 255 F.App'x at 305 (citations omitted). When, however, the various reasons are not only different but mutually inconsistent, the contradictions are sufficient to establish pretext for the purpose of summary judgment. See Hare v. Denver Merch. Mart, Inc., 255 F.App'x at 305 (citations omitted); Ruleford v. Tulsa World Pub. Co., 266 F.App'x 778, 782 (10th Cir. 2008)(unpublished)("Although inconsistent rationales may constitute pretext, the mere variety of reasons for a termination decision do not alone create pretext.")(citations omitted).

A plaintiff can use the cat's paw or rubber-stamp doctrine to establish that his or her employer's proffered reason for the employee's termination is pretextual. "The 'cat's paw' doctrine derives its name from a fable, made famous by La Fontaine, in which a monkey convinces an unwitting cat to pull chestnuts from a hot fire." EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d 476, 484 (10th Cir.2006). "As the cat scoops the chestnuts from the fire one by one, burning his paw in the process, the monkey eagerly gobbles them up, leaving none . . . for the cat." EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d at 484. In employment discrimination cases, the term "refers to a situation in which a biased subordinate, who lacks

decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d at 484. The rubber-stamp doctrine "refers to a situation in which a decisionmaker gives perfunctory approval for an adverse employment action explicitly recommended by a biased subordinate." EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d at 484. Under this doctrine, the "issue is whether the biased subordinate's discriminatory reports, recommendation, or other action caused the adverse employment action." EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d at 487. An employer can avoid liability, however, "by conducting an independent investigation of the allegations against an employee." EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d at 488. "In that event, the employer has taken care not to rely on the say-so of the biased subordinate, and the causal link is defeated [between the allegedly discriminatory workplace statements and the termination decision]." EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d at 488. For a plaintiff to prevail on a cat's paw theory claim, he or she "must show that a biased subordinate's discriminatory reports, recommendations, or other actions caused the adverse employment action." Hamby v. Associated Cent. for Therapy, 230 F.App'x 772, 780 (10th Cir. 2007)(unpublished).

In EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles, the Tenth Circuit held that Cesar Grado, a District Sales Manager, had broad responsibility to bring facts to the attention of the Human Resources Department, which was ultimately responsible for deciding whether to take any disciplinary action. See 450 F.3d at 478. The plaintiff produced evidence that Grado had made "many race-based remarks" and may have used a racial epithet to describe the plaintiff. EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d at 489. The Tenth Circuit determined that

summary judgment was inappropriate, because a fact-finder could conclude that Grado feeding biased-tainted information to the decision-maker caused the plaintiff's termination.  See EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d at 492.

The Tenth Circuit held that summary judgment was inappropriate, although the decision-maker directed another employee to pull the plaintiff's personnel file.  See EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d at 492. The Tenth Circuit found the decision-maker's actions insufficient to constitute an independent investigation.  See EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d at 492 (stating that the decision-maker's "investigation [was] inadequate, as a matter of law, to defeat the inference that . . . Grado's racial bias tainted the decision."  (internal quotations omitted)).  The Tenth Circuit explained that the problem was the decision-maker "never sought any other version of events, and therefore had no other reason other than . . . Grado's report to believe that the file was relevant."  EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d at 493.  The Tenth Circuit held that summary judgment was inappropriate, even though the decision-maker did not know the race of the plaintiff and maintained that race had no part in her decision to terminate the plaintiff.  See EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d at 481.  See Flitton v. Primary Residential Mortgage, Inc., 238 F.App'x 410, 418 n. 5 (10th Cir. 2007)(unpublished)(holding that summary judgment was inappropriate, because the Tenth Circuit's "caselaw permits [it] to impute the biases of subordinates to an ultimate decisionmaker if 'the biased subordinate's reports, recommendation, or other actions caused the adverse employment action,'" and the record revealed that the decision-maker may have been persuaded to fire the plaintiff based on the actions of a biased subordinate)(quoting EEOC v. BCI Coca-Cola Bottling Co. of Los

Angeles, 450 F.3d at 487).[31]

## **RELEVANT LAW REGARDING SUPPLEMENTAL JURISDICTION**

It is a fundamental precept of American law that the federal courts are "courts of limited jurisdiction." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). Federal courts "possess only that power authorized by [the] Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Among the powers that Congress has bestowed upon the courts is the power to hear controversies arising under federal law -- federal question jurisdiction -- and controversies arising between citizens of different states -- diversity jurisdiction. See 28 U.S.C. §§ 1331-32.

1.     **Supplemental Jurisdiction.**

Although a statutory basis is necessary for federal courts to exercise jurisdiction over a controversy, "it is well established -- in certain classes of cases -- that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. at 552. The Supreme Court of the United States has long subscribed to the concept of supplemental jurisdiction recognized in two common-law doctrines -- pendent and ancillary jurisdiction. Federal courts may exercise pendent jurisdiction over state-law claims when "state and

---

[31]The Supreme Court recently addressed the cat's paw theory in a case involving liability under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4301 to 4304 ("USERRA"). See Staub v. Proctor Hosp., 131 S.Ct. 1186, 1189 (2011). The Supreme Court reversed the Court of Appeals for the Seventh Circuit's entry of summary judgment in the defendant's favor. See Staub v. Proctor Hosp., 131 S.Ct. at 1194. The Supreme Court held that, "if a supervisor performs an act motivated by antimilitary animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA." Staub v. Proctor Hosp., 131 S.Ct. at 1194 (emphasis original)(footnotes omitted).

federal claims . . . derive from a common nucleus of operative fact."  United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  Supplemental jurisdiction gives federal courts the flexibility to hear a cause of action even after the introduction of third parties whose insertion into the litigation is not supported by any independent grounds for federal jurisdiction, when those parties share a common interest in the outcome of the litigation and are logical participants in it.  See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 375 n.18 (1978).

In 1988, Chief Justice William H. Rehnquist created the Federal Courts Study Committee to analyze the federal court system and to recommend reforms.  See 16 Moore's Federal Practice, § 106.04[5] (Matthew Bender 3d ed.).  In response to the Committee's findings regarding "pendent" and "ancillary" jurisdiction, Congress codified the application of the two doctrines when it passed the Judicial Improvements Act of 1990:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  In enacting 28 U.S.C. § 1367, Congress conferred upon federal district courts "supplemental forms of jurisdiction . . . [that] enable them to take full advantage of the rules on claim and party joinder to deal economically -- in single rather than multiple litigation -- with matters arising from the same transaction or occurrence."  Report of the Federal Courts Study Committee, Part II.2.B.2.b. (April 2, 1990), reprinted in 22 Conn. L. Rev. 733, 787 (1990).

**2.      District Court Discretion.**

The Tenth Circuit has followed the Supreme Court's lead in classifying supplemental jurisdiction, not as a litigant's right, but as a matter of judicial discretion.  See Estate of Harshman

v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004)(citing City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).  In circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction.  The traditional analysis, based on the Supreme Court's opinion in United Mine Workers v. Gibbs, compelled courts to consider "judicial economy, convenience and fairness to litigants" when deciding whether to exercise supplemental jurisdiction.  383 U.S. at 726. Similarly, Congress' supplemental jurisdiction statute enumerates four factors that the court should consider:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  In applying these factors, district courts should seek to exercise supplemental jurisdiction in an effort to "vindicate values of economy, convenience, fairness, and comity."  Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164.

Numerous courts have acknowledged that 28 U.S.C. § 1367(c) necessarily changed the district courts' supplemental jurisdiction discretion analysis and that, unless one of the conditions of 28 U.S.C. § 1367(c) exists, courts are not free to decline jurisdiction.  See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998)("Section 1367 has indeed altered Gibbs' discretionary analysis."); McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994)("The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four

instances described therein."); <u>Executive Software N. Am. v. U.S. Dist. Court</u>, 24 F.3d 1545, 1557 (9th Cir. 1994)("By codifying preexisting applications of <u>Gibbs</u> in subsections (c)(1)-(3), however, it is clear that Congress intended the exercise of discretion to be triggered by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories."); <u>Palmer v. Hosp. Auth.</u>, 22 F.3d 1559, 1569 (11th Cir. 1994)("[S]upplemental jurisdiction must be exercised in the absence of any of the four factors of section 1367(c)."); <u>Bonadeo v. Lujan</u>, No. 08-0812, 2009 WL 1324119, at *8 (D.N.M. Apr. 30, 2009)(Browning, J.)("28 U.S.C. § 1367(c) changed the district courts' supplemental jurisdiction discretion analysis to prohibit courts from declining jurisdiction unless one of the conditions of 28 U.S.C. § 1367(c) exists."). At least one other district court in the Tenth Circuit besides this Court has reached the same conclusion. <u>See</u> <u>Gudenkauf v. Stauffer Commc'ns, Inc.</u>, 896 F.Supp. 1082, 1084 (D. Kan. 1995)("[A]ny exercise of discretion declining jurisdiction over pendent claims or parties cannot occur until 'triggered' by the existence of one of the four conditions enumerated."). This Court has stated that, "[i]n circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction." <u>Krumm v. Holder</u>, No. 08-1056, 2009 WL 1563381, at *14 (D.N.M. May 27, 2009)(Browning, J.).[32]

## ANALYSIS

The Court finds that Diaz' claims of race discrimination are limited to the period after September 11, 2009 because the Settlement Agreement addressed all claims arising before that date.

---

[32]The Court's decision in <u>Krumm v. Holder</u> does not directly discuss how 28 U.S.C. § 1367(c) affects the district court's discretion, but it cites to <u>Bonadeo v. Lujan</u>, which states that 28 U.S.C. § 1367(c) modified district courts' supplemental jurisdiction discretion. <u>See</u> 2009 WL 1563381, at *14 (citing <u>Bonadeo v. Lujan</u>, 2009 WL 1324119, at *8).

The Court concludes that Diaz has not shown a genuine issue of material fact of race discrimination, because she has not introduced any evidence which would allow the Court to draw an inference of discrimination.  Even if Diaz has established a prima-facie case, she has not introduced evidence raising a genuine issue of material fact as to pretext.  Because this Memorandum Opinion and Order disposes of all the federal issues in this case, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims and will dismiss them without prejudice.

## I.   THE SETTLEMENT AGREEMENT BARS ALL RACE DISCRIMINATION CLAIMS ARISING ON OR BEFORE SEPTEMBER 11, 2009.

The City of Tucumcari asserts that the mediation settled Diaz' claims of race discrimination and that the Settlement Agreement therefore bars them.  See Mem. MSJ at 6.  The record shows that Diaz voluntarily participated in a mediation and entered into a binding Settlement Agreement, which she signed on November 3, 2009.  See Settlement Agreement at 16-17.  The Settlement Agreement states that Diaz "agrees not to institute a lawsuit" on the basis of the conduct alleged in her EEOC Charge of Discrimination.  See Settlement Agreement ¶ 1, at 16.  In her EEOC Charge of Discrimination, Diaz asserted that the City of Tucumcari had engaged in discriminatory conduct from July 16, 2009 to September 11, 2009, the date when Diaz was written up for her conversation with the former Commissioner.  See Sept. 24, 2009 Charge of Discrimination.  The evidence suggests, and there is no evidence to the contrary, that her signature on this agreement was knowing and voluntary.  See Rey Aff. ¶ 16, at 4.  As a result of the Settlement Agreement, Diaz cannot pursue in this case, or any other case, any claims that were encompassed within the claims she released in the Settlement Agreement, see Logan v. Principi, 56 F.App'x 4at 448; Vinnett v. Gen. Elec. Co., 271 F.App'x at 913, including the allegation that she was disciplined for speaking Spanish at work, see September 24, 2009 Charge of Discrimination at 13; Settlement Agreement ¶ 1, at 16.

Additionally, at the November 30, 2011 hearing, Diaz conceded that the Settlement Agreement represents an accord and satisfaction and that the Settlement Agreement bars any race discrimination claims arising before November 3, 2009.[33]  See Tr. at 5:16-23 (Court, Juarez).  Diaz also agreed that her racial discrimination claim is limited to the twenty-seven days between the November 3, 2009 Settlement Agreement and her November 30, 2009 termination.  See Tr. at 5:24-6:5 (Court, Juarez).

Because Diaz has conceded that the Settlement Agreement is an accord and satisfaction of her earlier race discrimination claims, and because the Settlement Agreement signed on November 3, 2009 disposed of all her earlier claims of race discrimination from between July 16, 2009 and September 11, 2009, the Court finds that any current claim of race discrimination must be based on conduct occurring after September 11, 2009.

## II.   THE CITY OF TUCUMCARI IS ENTITLED TO SUMMARY JUDGMENT ON COUNT I, BECAUSE DIAZ FAILS TO INTRODUCE EVIDENCE ON ALL OF THE ELEMENTS OF A PRIMA-FACIE CASE.

The City of Tucumcari argues that Diaz has failed to satisfy her burden of establishing a prima-facie case of discrimination.  See Mem. MSJ at 7.  Diaz asserts that there is no dispute that: (i) she is Hispanic; (ii) her discrimination complaint against her employer was resolved only twenty-seven days before her termination; and (iii) she was terminated from her employment with the City of Tucumcari.  See Response at 4-5.  Diaz contends that she has set forth a prima-facie case and that

---

[33]There was some confusion about dates at the November 30, 2011 hearing.  Although the Settlement Agreement was signed on November 3, 2009, it disposed only of claims relating to conduct from July 16, 2009 to September 11, 2009.  See Sept. 24, 2009 Charge of Discrimination at 13; Settlement Agreement at 16.  Additionally, the City of Tucumcari, in its Memorandum in Support of its Motion for Summary Judgment, argued only that claims arising on or before September 11, 2009 would be barred.  See Mem. MSJ at 7.  For the reasons discussed in the Court's analysis of Diaz' prima facie-case, this confusion over dates, whether claims before September 11, 2009 or before November 3, 2009 are barred, makes no difference in the outcome of this case.

multiple disputes of fact bar summary judgment in the City of Tucumcari's favor.  See Response at 5.

### A.    THE TENTH CIRCUIT DOES NOT REQUIRE THAT DIAZ SHOW THAT SIMILARLY SITUATED EMPLOYEES WERE TREATED DIFFERENTLY AS PART OF HER PRIMA-FACIE CASE.

In its Memorandum in Support of Summary Judgment, the City of Tucumcari asserts that Orr v. City of Albuquerque, 417 F.3d 1144 (10th Cir. 2005), establishes the relevant legal standard for whether a plaintiff has satisfied her prima-facie case.  See Mem. MSJ at 7.  In Orr v. City of Albuquerque, the Tenth Circuit stated that, to "make out a prima facie case of discrimination, the female Plaintiffs must demonstrate (1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated employees."  417 F.3d at 1249.  In her Response, Diaz set forth a similar standard, in reliance on Goodwin v. Gen. Motors Corp., 275 F.3d 1005 (10th Cir. 2002).  See Response at 4.  In Goodwin v. Gen. Motors Corp., the Tenth Circuit stated that a plaintiff "may demonstrate a prima facie case of race discrimination in a number of ways, including showing that (1) she is a member of a racial minority, (2) her job performance was satisfactory, (3) she was adversely affected by General Motors' employment decisions and (4) similarly situated non-minority employees were treated differently from her."  275 F.3d at 1012. At the November 30, 2011 hearing, the parties discussed whether Diaz must show that similarly situated employees were treated differently from her.  Diaz asserted that the question whether similarly situated employees were treated differently is a difficult one, because she was the only person in her position.  See Tr. at 6:15-17 (Juarez).  Diaz stated that she was not sure that showing that similarly situated persons were treated differently is part of the proof when the employee is the only one with a certain job function.  See Tr. at 7:7-9 (Juarez).  The City of Tucumcari stated that

-43-

both its Memorandum in Support of Summary Judgment and Diaz' Response included as an element whether similarly situated employees were treated differently.  See Tr. at 14:10-13 (Anderman).  The City of Tucumcari argued that Diaz has not met her burden of showing that similarly situated employees were treated differently.  See Tr. at 15:9-10 (Anderman).

While a plaintiff may establish the last prong of her prima-facie case of discrimination through comparison with similarly situated employees, the Tenth Circuit does not require that she do so to satisfy this aspect of the McDonnell-Douglas burden-shifting framework.  In E.E.O.C. v. Horizon/CMS Healthcare Corp., the Tenth Circuit noted:

> While we resolve the issue in this case by applying the fourth element advocated by Defendant, we express no opinion whether it is a proper articulation of the fourth element under the facts of this case or whether the Commission could have established the fourth element of its prima facie case in some other manner.  Nothing in the case law in this circuit requires a plaintiff to compare herself to similarly-situated co-workers to satisfy the fourth element of her prima facie case.  A plaintiff alleging discrimination in violation of Title VII can satisfy the fourth element of her prima facie case in a number of ways.  See Perry v. Woodward, 199 F.3d 1126, 1140 (10th Cir. 1999), cert denied, 529 U.S. 1110 (2000) (holding that a plaintiff claiming discriminatory discharge established the fourth element by showing the job was not eliminated); Mohammad v. Callaway, 698 F.3d 395, 398 (10th Cir. 1983)(concluding that a plaintiff who claimed discriminatory failure to promote established the fourth element by showing the position was filled).

220 F.3d at 1196 n.6.  In Baker v. Blue Cross Blue Shield of Kan., 128 F.App'x 701 (10th Cir. 2005)(unpublished), the Tenth Circuit again noted that the McDonnell-Douglas "framework is flexible and that a comparison to similarly situated co-workers need not be made in every case." 128 F.App'x at 703 n. 3.

The Tenth Circuit therefore does not require that a plaintiff make a comparison to similarly situated co-workers, and the Court will not require that Diaz do so to survive the Motion for Summary Judgment.

**B.      DIAZ FAILS TO SATISFY THE ELEMENTS OF HER PRIMA-FACIE CASE.**

Under any of the standards setting forth the prima-facie case for a terminated employee, Diaz has failed to introduce any evidence to meet her prima facie burden.  Although not an onerous burden, a Title VII plaintiff must set forth the facts establishing her prima-facie case.  See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 253.  Generally, when the "comparison to others similarly situated is 'the method chosen by [the plaintiff]' to raise an inference of discrimination, the claim is properly analyzed on those terms."  Sorbo v. United Parcel Service, 432 F.3d 1169, 1173-74 (10th Cir. 2005)(quoting Jones v. Denver Post Corp., 203 F.3d 748, 753 (10th Cir. 2000)). Under the prima-facie case that Diaz set forth in her Response, Diaz must show that she was similarly situated to other employees who were treated differently.  See Response at 4 (citing Goodwin v. Gen. Motors Corp., 275 F.3d at 1012).  While Diaz stated that she has been treated in a discriminatory and disparate manner in her employment in her Complaint, Diaz has not introduced any evidence that other employees were treated differently.  See Complaint ¶ 21, at 4.  Additionally, at the November 30, 2011 hearing, Diaz appeared to concede that she could not establish that similarly situated employees were treated differently, because she was the only individual employed as a Program Specialist.  See Tr. at 6:15-17 (Juarez).  Diaz fails to demonstrate that similarly situated employees were treated differently and, accordingly, cannot establish a prima-facie under either test that the parties used to establish the prima facie elements.

Although the Court need not go beyond the elements of the prima-facie case that the parties set forth, see  Sorbo v. United Parcel Service, 432 F.3d at 1173-74; Barber v. Lovelace Sandia Health Systems, 409 F.Supp.2d at 1328 n.6, the Court, looking at the record before it, investigated whether Diaz might satisfy the elements of a prima-facie case, if the standard did not require a

comparison to similarly situated individuals.  Under the standard established in <u>Perry v. Woodward</u>, a case which also addressed a discriminatory discharge, Diaz must establish that: (i) she belongs to a protected class; (ii) she was qualified for her job; (iii) despite her qualifications, she was discharged; and (iv) the job was not eliminated after her discharge.  <u>See</u> 199 F.3d at 1138.  A plaintiff may show that she was qualified "by credible evidence that she continued to possess the objective qualifications she held when she was hired, or by her own testimony that her work was satisfactory, even when disputed by her employer, or by evidence that she had held her position for a significant period of time."  <u>Nguyen v. Gambro BCT, Inc.</u>, 242 F.App'x 483, 489 (10th Cir. 2007)(unpublished)(citing <u>Kenworthy v. Conoco, Inc.</u>, 979 F.2d 1462, 1470 (10th Cir. 1992)).  Diaz has introduced no evidence to show that she was qualified for her job.  In fact, Diaz appears to concede that she did not take a required certification workshop.  <u>See</u> <u>Rolland v. Primesource Staffing, LLC</u>, 257 F.App'x at 72 ("However, he falters in his attempt to show he was qualified -- in fact, evidence introduced by Mr. Rolland himself noted that he had slept on the job while working for one of Primesource's clients.").  Diaz did not introduce evidence to show that she had been a Program Specialist for many years or to demonstrate that she continued to possess the objective qualifications she held when she was hired.  <u>See</u> <u>Nguyen v. Gambro BCT, Inc.</u>, 979 F.2d at 1470.  Although the City of Tucumcari hired Diaz for her position, that fact alone does not satisfy the second prong of her prima-face case under this standard.  In <u>Nguyen v. Gambro BCT, Inc.</u>, the Tenth Circuit noted that the defendant hired the plaintiff despite her lack of qualifications, but also noted that the plaintiff's performance reviews were rated "excellent," which demonstrated that she was qualified for the purposes of the prima-facie case.  242 F.App'x at 488.  The requirement set forth in <u>Perry v. Woodward</u>, that Diaz show that she was qualified for her position, <u>see</u> 199 F.3d at 1138,

is similar to the requirement in the case Diaz cites, Goodwin v. Gen. Motors Corp., that she establish

her job performance was satisfactory, see 275 F.3d at 1012 ("Goodwin may demonstrate a prima

facie case of racial discrimination in a number of ways, including a showing that . . . (2) her job

performance was satisfactory . . . .").  To satisfy her burden under the Goodwin v. Gen. Motors

Corp. prima-facie elements, Diaz should have introduced some information which would allow the

Court to infer that Diaz was qualified for her position.  Diaz, however, has introduced no evidence

to show either that she was qualified for her job or that her job performance was satisfactory.  It is

the firing of a "qualified minority employee [that] raises the inference of discrimination because it

is facially illogical to randomly fire an otherwise qualified employee."  Perry v. Woodward, 199

F.3d at 1140.  The Tenth Circuit has noted that courts have enumerated a variety of circumstances

that can give rise to an inference of discrimination to satisfy the elements of a prima facie case,

including:

> actions or remarks made by decisionmakers that could be viewed as reflecting a
> discriminatory animus . . . , preferential treatment given to employees outside the
> protected class . . . , in a corporate downsizing the systematic transfer of a discharged
> employee's duties to other employees . . . , or a pattern of recommending the plaintiff
> for positions for which she is not qualified [or over-qualified] and failure to surface
> plaintiff's name for positions for which she is well-qualified.  A plaintiff might also
> rely upon the fact that the defendant following plaintiff's termination, continued to
> seek applicants to fill the position, . . . or, more generally, upon the timing or
> sequence of events leading to plaintiff's termination.

Plotke v. White, 405 F.3d at 1101 (citing Chertkova v. Conn. Gen. Life Ins., 92 F.3d 81, 91 (2d Cir.

1996)).  At the hearing, Diaz asserted that certain job functions were taken away from her, but

introduced no evidence showing that job functions were taken away from her or which job functions

were taken away from her.  See Tr. at 6:17-20 (Juarez).  Even looking to the September 11, 2009

incident for which the City of Tucumcari reprimanded Diaz, the Court finds no support for an

inference of discrimination because Diaz has introduced no evidence showing that Martin demanded she not speak Spanish at the office and did not repeat that allegation in her affidavit.  <u>See</u> Diaz Aff. at 1-6.  Only Diaz' Complaint refers to Martin's demand that Diaz not speak Spanish, <u>see</u> Complaint ¶ 16, at 3, and a party cannot "rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  <u>Vitkus v. Beatrice Co.</u>, 11 F.3d at 1539.  In <u>Woods-Gatson v. Sequoyah Enter., Inc.</u>, the Tenth Circuit stated that it is neither a district court's nor the Tenth Circuit's role to advocate on behalf of a Title VII plaintiff and that a failure to "offer evidence from which one could infer unlawful discrimination on the part of her employer" rendered her appeal from the district court's holding, that she failed to establish a prima facie case, frivolous.  340 F.App'x at 452 (analyzing a <u>pro se</u> plaintiff's appeal from the dismissal of her lawsuit).

Under the prima-facie elements that both Diaz and the City of Tucumcari set forth, Diaz failed to establish a prima facie case.  Going beyond the elements that the parties put forth and conducting a careful examination of the record, the Court finds that Diaz also does not satisfy the standard set forth in <u>Perry v. Woodward</u>.  Diaz did not offer facts, under the prima-facie elements she set forth or any other prima-facie standard, which would allow the Court to infer that discrimination -- racial, sexual, or some other disparate treatment.  Even under the catch-all prima-facie element, where the plaintiff need only show that "the challenged action took place under circumstances giving rise to an inference of discrimination," Diaz has not established a prima-face case.  <u>Woods-Gatson v. Sequoyah Enter. Inc.</u>, 450 F.App'x at 452.  Because Diaz has set forth no evidence which would allow the Court to infer discrimination, regardless how that last element of the prima-facie case is worded, Diaz has not met her burden to satisfy the elements of a prima-facie

case, and summary judgment on Count I of her Complaint in the City of Tucumcari's favor is appropriate.[34]

### C.   EVEN IF DIAZ SATISFIED THE ELEMENTS OF A PRIMA FACIE CASE, SHE HAS NOT INTRODUCED EVIDENCE DEMONSTRATING THAT THE CITY OF TUCUMCARI'S LEGITIMATE, NON-DISCRIMINATORY REASON FOR HER TERMINATION IS PRETEXTUAL.

The City of Tucumcari asserted that it has a legitimate, non-discriminatory reason for terminating Diaz because Diaz "continued to perform poorly despite having been given a warning about her performance." Mem. MSJ at 9. The City of Tucumcari introduced a variety of electronic mail and letters to and about Diaz suggesting that she had performance problems to support their legitimate, non-discriminatory reason for her discharge. See Oct. 13, 2009 Email at 19; Oct. 20, 2009 Letter at 20; Oct. 21, 2009 Email at 21; Oct. 22, 2009 Email at 22; Oct. 23, 2009 Email at 23; Nov. 9, 2011 Email at 24; Nov. 11, 2009 Email at 25; Nov. 20, 2009 Email 1 at 26; Nov. 20, 2009 Email 2 at 27. In her Response, Diaz states:

> During that time both Ms. Martin and Ms. Riddle were harassing Plaintiff. During this time Plaintiff's mother was very ill and she would go home for lunch breaks to check on her. Ms. Martin would send emails to Plaintiff regarding disputed emails. She would be trying to complete Plaintiff's work and she would be interrupting Plaintiff and caused Plaintiff to fall behind on getting her work completed.

Diaz Aff. ¶ 10, at 4-5; Response at 10.

When a defendant provides a legitimate, non-discriminatory reason for an adverse employment action, the burden shifts to the plaintiff to establish that the given reason is pretext for discrimination. See McDonnell Douglas, 411 U.S. at 804-05 ("Once the defendant meets its burden

---

[34]The Court does not decide here whether Diaz has established a prima-facie case of discrimination under state law or whether she has established a prima-facie case of retaliation under state law. The focus of Diaz' Response appears to be her retaliation claim, which she explains more fully than her Title VII race discrimination claim. See Response at 4-5.

of production by offering a legitimate rationale in support of its employment decision, the burden shifts back again to the plaintiff to show that the defendant's proffered reasons were a pretext for discrimination."). Poor performance is "a quintessentially legitimate and nondiscriminatory reason for termination." Bryant v. Farmers Ins. Exch., 432 F.3d 1114, 1125 (10th Cir. 2005)(citations omitted). Pretext "can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-retaliatory reasons." McInerney v. United Air Lines, Inc., Nos. 09-1423, 09-1425, 2011 WL 1350453, at * 5 (10th Cir. Apr. 11, 2011)(unpublished)(alterations omitted)(citations omitted). A plaintiff may also show pretext "by providing evidence that he was treated differently from other similarly-situated, nonprotected employees." Cooper v. Wal-Mart Stores, Inc., 296 F.App'x 686, 693 (10th Cir. 2008)(citing Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1232(10th Cir. 2000)). The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Swackhammer v. Sprint/United Mgmt. Co., 493 F.3d 1160, 1173 (10th Cir. 2007)(alteration omitted)(internal quotation marks omitted). Thus, the plaintiff bears the burden to produce evidence at the pretext phase sufficient to support an inference of discrimination to survive summary judgment. See Swackhammer v. Sprint/United Mgmt. Co., 493 F.3d at 1173-74 ("Neither of these explanations allows a reasonable factfinder to reach an inference of illegal gender discrimination. Thus, because Swackhammer presented no additional information which might allow such an inference of discrimination, she has failed to satisfy her burden to demonstrate pretext under the third step of the McDonnell Douglas framework. We therefore AFFIRM the district court's entry

-50-

of summary judgment in favor of Sprint.")

Diaz concedes that she experienced problems with getting her work done on time, which supports the City of Tucumcari's legitimate, non-discriminatory reason.  See Response at 10. Furthermore, Diaz did not create a genuine issue of material fact regarding the City of Tucumcari's proffered non-discriminatory reason.  In her Response, Diaz attempted to dispute the City of Tucumcari's asserted fact that Diaz was terminated because she continued to exhibit performance problems relating to the requirements of the program, see Mem. MSJ ¶ 10, at 3, stating that: (i) she was the only Program Specialist, and was taking care of the Section 8 and Public Housing Authority programs; (ii) Viki Riddle was hired as a bookkeeper, and, during one lunch break, the Public Housing Authority files were moved into Riddle's office; (iii) Riddle began signing documents "PHA Manager" and bossing Diaz around; (iv) Martin and Riddle began harassing Diaz; (v) during this time Diaz' mother was very ill and Diaz would go home at lunch breaks to check on her; (vi) Martin would send electronic mail transmissions to Diaz regarding disputed electronic mail transmissions; (vii) Martin would attempt to complete Diaz' work; and (viii) Martin would interrupt Diaz and cause Diaz to fall behind on getting her work completed, see Diaz Aff. ¶ 10, at 4-5; Response at 10.  Nowhere in her affidavit, the only evidence that Diaz introduced, does she state that she was not experiencing performance problems and explain why the offered legitimate, nondiscriminatory reason is false.  Rather, Diaz' statements in her Response and affidavit attempt to explain why she fell behind in her work.

In Smith v. Oklahoma ex rel. Tulsa County District Attorney, 245 F.App'x 807 (10th Cir. 2007)(unpublished), the Tenth Circuit also addressed whether an employer's offered legitimate non-discriminatory reason for termination -- deficiencies in work performance -- was pretextual.  See 245

F.App'x at 816.  There, the plaintiff argued that there were disputed facts regarding several of the incidents invoked to support her termination, citing her own testimony to support her argument.  See Smith v. Oklahoma ex rel. Tulsa Cnty. Dist. Attorney, 245 F.App'x at 816.  The Tenth Circuit held that the plaintiff had offered insufficient evidence to raise a genuine issue of material fact as to pretext, because it was "undisputed that [the decision-maker] received information from Mr. Manning, and from other employees, that Ms. Smith was not performing her job adequately."  Smith v. Oklahoma ex rel. Tulsa Cnty. Dist. Attorney, 245 F.App'x at 816.  In this case, it is also undisputed that there were complaints from Martin and Riddle that Diaz was not performing her job adequately.  See October 20, 2009 Email at 20; October 21, 2009 Email at 21; October 22, 2009 Email at 22; November 11, 2009 Email at 26.  Diaz' generalized claim that Martin and Riddle harassed her is also insufficient to raise a genuine issue of material fact as to pretext.  In Sulich v. Sysco Intermountain Food Servs., 242 F.App'x 532 (10th Cir. 2007)(unpublished), the Tenth Circuit held that the plaintiff's "vague, generalized claims that his supervisors and coworkers told 'Pollack' jokes and looked at him as if he were dumb are insufficient to raise a genuine issue of material fact as to pretext."  242 F.App'x at 536.  The Tenth Circuit explained that the plaintiff was "unable to identify specific remarks made by a supervisor" and that "these allegations do not challenge Sysco's nondiscriminatory reason for terminating him."  Sulich v. Sysco Intermountain Food Servs., 242 F.App'x at 536.  Similarly, Diaz makes vague allegations that she was harassed, but points to no specific conduct, and does not, in her Response or Affidavit, challenge the City of Tucumcari's nondiscriminatory reason for terminating her.  Diaz also makes the conclusory allegation that she was terminated under "false pretenses" and that Martin harassed her for filing an EEOC Charge of Discrimination.  Diaz Aff. ¶ 12, at 5; Response at 11.  Diaz does not, however, elaborate on those

claims or point to any specific incident of harassment.[35]  Furthermore, Diaz does not explain or argue the significance of some of her allegations.  That Martin would try to complete Diaz' work or that she would send "emails to Plaintiff regarding disputed emails" do not appear to either contradict the City of Tucumcari's non-discriminatory reason for her termination or support an inference of discrimination.  Response at 10.  Additionally, while Diaz asserted in her Complaint that she was unaware of any of the infractions listed in her termination letter and that such infractions were not disclosed during the mediation which took place twenty-seven days before her termination, Diaz does not repeat this allegation in her Response.  See Complaint ¶ 19, at 4.  Diaz introduced no evidence to contradict the electronic mail transmissions the City of Tucumcari introduced demonstrating that concerns about her performance were conveyed to Diaz and arose in the period after the mediation.  The City of Tucumcari also correctly states that "Plaintiff's Response fails to establish that the performance problems documented in the numerous emails were not legitimate issues for a supervisor to bring to the attention of an employee."  Reply at 3.

Diaz' allegations of harassment and false pretenses are conclusory allegations made without specifics or explanation.  She provides no specific incidents or examples.  Diaz cannot "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation."  Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1.  In contrast to Diaz' attempts to establish pretext, cases where the Tenth Circuit has found genuine issues of material fact

---

[35]The Court does not decide that these allegations of interference with an employee's work can never establish pretext.  Rather, the Court finds that these allegations without more specific facts are insufficient to rebut the City of Tucumcari's given legitimate, non-discriminatory reason.  Here, Diaz stated only that Martin harassed her without providing background facts about what happened, when it happened, and why the harassment undermines the City of Tucumcari's reason for her termination.

raising an inference of discrimination or pretext have involved much more specific evidence.  In Trujillo v. PacifiCorp, 524 F.3d 1149 (10th Cir. 2008), the plaintiffs demonstrated that similarly situated employees were not discharged, but given temporary disability leave or given days without pay, for similar misconduct.  See 524 F.3d at 1159.  The plaintiffs in that case also introduced evidence and testimony that the given reason for their discharge -- fraudulent time sheets -- was suspicious, because the evidence demonstrated that other employees did not regularly follow time sheet or gate-access procedures.  See Trujillo v. PacifiCorp, 524 F.3d at 1159.  Furthermore, the plaintiffs in Trujillo v. PacifiCorp, demonstrated that the defendant failed to apply their normal assumption that the Trujillos came to work together to the Trujillos' benefit.  See 524 F.3d at 1159. In Woods v. Boeing Co., 355 F.App'x 206 (10th Cir. 2009)(unpublished), the Tenth Circuit found that a plaintiff established that the defendant's given reasons -- "limited skills/low quality/low productivity/marginal teaming abilities" -- were pretextual in an ADEA discriminatory hiring case. 355 F.App'x at 210.  There, the plaintiff demonstrated that: (i) his last performance review contradicted each reason the defendant gave; (ii) the defendant admitted that he met the minimum qualifications for the position; (iii) despite his supervisor's deposition testimony that the plaintiff committed many errors on the job, the supervisor had previously commended the plaintiff for his lack of errors; (iv) every one of the employees that the supervisor recommend against hiring was forty-eight years or older and three-fourths of those not retained were over fifty years old.  See Woods v. Boeing Co., 355 F.App'x at 210.  Evidence of pretext does not, however, have to be so comprehensive, and the Tenth Circuit has stated that the disparity between a defendant's "earlier evaluation of plaintiff and the justifications later given . . . are alone sufficient to require a jury determination on pretext."  Woods v. Boeing Co., 355 F.App'x at 210.

Diaz does not introduce any evidence which approximates the evidence introduced in these cases.  These cases provide specific facts from which the Tenth Circuit was able to determine that factual issues exist and the record involved appears to have been comprehensive.  Here, Diaz introduced only her own affidavit, and left out essential information, which would have assisted the Court in examining her claim of pretext, including: (i) her own assessment of her performance; (ii) information regarding the performance reviews she received; or (iii) specific facts related to her harassment allegations.  Diaz alleges that her termination was made under false pretenses and that Martin harassed her to establish pretext; however, she does not elaborate on these contentions.  The Tenth Circuit has affirmed summary judgment in favor of a defendant where the plaintiff does not "provide[] any specific facts that speak to [their] assertion" of pretext or "effectively address[] the specific reason proffered by the [defendant] for" the adverse employment action.  Koon v. Sedgwick Cnty., Kan., 429 F.App'x 713, 716 (10th Cir. 2011)(unpublished).  Like the plaintiff in Koon v. Sedgwick Cnty., Kan., Diaz does not provide specific facts to support her allegations.  These bare allegations, without more, cannot establish pretext.  Furthermore, in her affidavit, Diaz does not specifically dispute the City of Tucumcari's proffered reason for her termination.  Because Diaz has not introduced evidence which creates a genuine issue of material fact whether the City of Tucumcari's proffered legitimate, nondiscriminatory reason is false or that she was treated differently from similarly situated employees, summary judgment in the City of Tucumcari's favor is appropriate.

While Diaz need not do so to establish pretext, Diaz also offers no evidence that any of Martin's or the City of Tucumcari's conduct towards her after September 11, 2009 was in any way related to her race.  The allegation that Diaz was reprimanded for speaking Spanish is the only race-

related allegation that Diaz made in her Complaint and the Court has determined that the Settlement Agreement bars any claim based on the incident.  Furthermore, only Diaz' Complaint contains that allegation and her affidavit does not refer to Martin's demand that Diaz not speak Spanish. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 ("[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted.")(citations omitted).

Diaz has not introduced any evidence to demonstrate a genuine issue of material fact of an inference of discrimination or pretext.  Accordingly, even if Diaz established a prima-facie case, the Court would grant summary judgment on Count I in favor of the City of Tucumcari.

## III.   THE COURT WILL DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REMAINING STATE LAW CLAIMS IN THE CASE.

The Court's conclusion, in this Memorandum Opinion and Order, that summary judgment in the City of Tucumcari's favor on Count I is appropriate, disposes of all of the federal claims in this case.  28 U.S.C. § 1367(c)(3) provides: "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The Tenth Circuit reviews a district court's decision not to exercise jurisdiction under 28 U.S.C. § 1367(c) for abuse of discretion.  See Nielander v. Bd. of Cnty. Comm'rs, 582 F.3d 1155, 1172 (10th Cir. 2009).  The Tenth Circuit has held: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining claims."  Koch v. City of Del City, No. 10-6105, 2011 WL 5176164, at *14 (10th Cir. Nov. 2, 2011)(quoting Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998)).  The Supreme Court has also recognized:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers of Amer. v. Gibbs, 383 U.S. at 726.  The Court has previously stated that it should usually decline to exercise supplemental jurisdiction when 28 U.S.C. § 1367(c) applies.

See Armijo v. New Mexico, No. 08-0336, 2009 WL 3672828, at *4 (D.N.M. Sept. 30, 2009)(Browning, J.)("The Supreme Court and the Tenth Circuit have not only acknowledged such a result, they have encouraged it.").  Additionally, the Tenth Circuit has recognized that a district court does not commit an "abuse of discretion" when it declines to exercise supplemental jurisdiction over a claim "under 28 U.S.C. § 1367(c)(3) . . . where it 'has dismissed all claims over which it has original jurisdiction[.]'" Muller v. Culbertson, 408 F.App'x 194, 197 (10th Cir. 2011)(unpublished).

Diaz originally filed her case in federal court.  See Complaint at 1.  The Court concludes that dismissal of the remaining state law claims without prejudice is proper.  The Court has reviewed whether any federal claims remain in the case, and the Court's Memorandum Opinion and Order disposes of all the federal claims.  At the November 30, 2011 hearing, Diaz stated that, "if the Court feels that what's left after its decision is only the state claims, then I would have to agree with the Court that maybe those should be sent over to allow the state court to resolve it." Tr. at 21:12-16 (Juarez).  When asked whether it would be Diaz' preference to have the state law claims decided in state court, if the Court determined that summary judgment on the federal claim was appropriate, Diaz responded that it would.  See Tr. at 21:17-18 (Court, Juarez).  Given the Tenth Circuit's guidance, that "[w]hen all federal claims have been dismissed, the court may, and usually should,

decline to exercise jurisdiction over any remaining state claims," the Court concludes that dismissing the remaining state law claims without prejudice is the appropriate resolution of this matter.  Koch v. City of Del City, 2011 WL 5176164, at *14 (quoting Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d at 1156.  Because the Complaint indicates that this case was originally filed in federal court and was not removed, see Complaint at 1, the Court should dismiss the remaining state law claims without prejudice, as it cannot remand the case to state court.  Finally, Diaz has stated that she prefers to litigate her state law claims in state court, and, to the extent possible, the plaintiff should be the master of her choice of forum.

Accordingly, the Court will decline to exercise supplemental jurisdiction over the state law claims, and will dismiss Counts II and III without prejudice.

IT IS ORDERED that the Defendant's Motion for Summary Judgment, filed August 5, 2011 (Doc. 22), is granted in part and denied in part.  The Court will grant the Motion for Summary Judgment in the City of Tucumcari's favor with respect to Count I, the race discrimination claim under Title VII of the Civil Rights Act of 1964,  Title VII, 42 U.S.C. § 2000e- to 2000e-17.  The Court will not decide Counts II and III, the state law race discrimination and retaliation claims, because the Court will decline to exercise supplemental jurisdiction over those claims.  Accordingly, the Court will dismiss without prejudice Counts II and III of the Complaint.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Santiago E. Juarez
Albuquerque, New Mexico

    *Attorney for the Plaintiff*

Virginia Anderman
Miller Stratvert, P.A.
Albuquerque, New Mexico

    *Attorneys for the Defendant*